BANK v. MEMPHIS.

(*Jackson.* May 5, 1901.)

1. TAXATION. *Back assessment.*

The back assessment feature of the General Assessment Act of 1897 does not authorize back assessment, for 1897 and preceding years, of property—*e. g.*; the capital stock of banks whose shares were exempt, which was not subject to original assessment under the laws applicable to said years. (*Post, pp. 69–73.*)

Act construed: Acts 1897, Ch. 1.

Case cited: Bank v. Memphis, 101 Tenn., 154.

2. SAME. *Suit for taxes paid under protest maintainable, when.*

A taxpayer who has paid taxes under protest can maintain an action to recover same, although he has not applied to the Board of Equalization for relief, when the assessment is void, as having been made without authority of law. (*Post, p. 72.*)

Case cited: Ward v. Alsup, 100 Tenn., 746.

3. DECREE. *Construction of.*

The meaning of a decree must be ascertained from its face; and its terms cannot, in the absence of pleadings impeaching it, be varied or altered by parol proof. (*Post, pp. 73–76.*)

FROM SHELBY.

Appeal from Chancery Court of Shelby County. F. H. HEISKELL, Ch.

COOPER & WADDELL and CARROLL, McKELLAR & BULLINGTON for Bank.

JNO. H. WATKINS for Memphis.

WILKES, J. This bill is by the bank to recover taxes which it has paid to the city for the year 1897.

There was a demurrer by the city, which was overruled with permission to rely on the same defenses by way of answer. In its answer the city set up that the bank was liable for taxes for 1897; that it had voluntarily paid them in a suit which had been previously brought to collect them, and hence it could not now recover them back from the city.

Proof was taken, and on final hearing the Chancellor gave the bank judgment against the city for $7,172.36 and costs, and the city has appealed and assigned errors.

It appears that the Trustee of Shelby County, who is by law tax-collector and treasurer of the city of Memphis, about the middle of January, 1899, assessed certain taxes against the capital stock of the bank upon the idea of omitted property and picked up taxes, including the taxes for 1897. This was done after due notice to the attorney of the bank. The taxes not having been paid, a bill was filed in chancery at Memphis on January 28, 1899, by the State, county, and city against the bank, to recover the State,

county, and municipal taxes assessed on the bank's capital stock by the Trustee.

The bank answered that its capital stock was exempt from taxation by reason of a clause in its charter, and contended that there was no legislative authority for its taxation.

No proof was taken, but on February 10, 1899, a decree was entered which struck out the assessments for 1896, but the assessments for city taxes for 1897 was permitted to stand, the decree reciting as follows:

"The Court being advised in the premises, and the complainants consenting thereto, it is adjudged and decreed that the assessments so made by the Trustee (1896, 1897, 1898) be canceled, vacated, and set aside, and for naught held except so far as the same is, or may be, the basis for city taxes for the year 1897, and for which purpose the assesment is reduced to the sum of $217,-000." The assessment had been made by the Trustee at $600,000.

There was a last clause to this decree, in the following words: "It being admitted by the complainants that the Trustee, John H. Alsup, has in his hands a distress warrant for. the collection of the city taxes for the year 1897, and threatens to seize the property of the defendant for the payment thereof, it is hereby expressly provided that the payment of said taxes provided by this decree to be made for said year, shall be con-

sidered and held as made under protest and duress of goods, and defendant shall have the benefit thereof, if it shall elect to sue to recover back said taxes."

The contention of the bank in this case is that the Trustee had no power to make the assessment, and it is therefore void, and not merely irregular or informal; that the bank was not subject to assessment for 1897; that the taxes were paid under duress, and hence the bank may recover them back; that the decree rendered in the former suit is not *res adjudicata* of the right to the taxes, and not a bar to the present action.

In the case of *Bank* v. *Memphis,* reported in 17 Pickle, 154, this Court held that an assessment made by the Board of Equalization of Shelby County for the year 1896 upon the capital stock of this bank, under the Act of 1895, was invalid for want of legislative authorization. It appears that under the cross bills filed in that case the county and city claimed taxes upon the bank for 1896, 1897, and their cross bills on the hearing were dismissed.

The liability of the bank for a tax upon its capital stock was, however, determined and announced. Afterwards, in April, 1897, the Legislature in a general law provided for the assessment and taxation of such banks, being Chapter 1 of the Acts of 1897, which was approved April 30, 1897.

Section 16 of that Act provides as follows: *"Be it further enacted,* That this Act shall not be so construed, and shall not so operate, as to exonerate and release from taxation any company or corporation whose charter exempts stock and shares thereof from taxation; but it is hereby enacted that in all cases where such stock is exempted, such company or corporation shall be assessed in such a way as may be lawful; and in all cases in which, by the terms or legal effect of the charter, the shares of the stock in any corporation are wholly or partially exempt from taxation, or in which a rate of taxation on the shares of the stock is fixed and prescribed, and declared to be in lieu of all taxes for State, county, and municipal purposes, shall be assessed and levied at a rate uniform with the rate levied upon other taxable property, upon the capital stock of said corporation, the value of which capital stock shall be fixed and returned by the Assessor as being equal to the aggregate market value of all the shares of stock in said corporation, including the net surplus; *Provided, however,* That where the State has provided, in the charter of any such corporation or company, that it shall pay a stated per cent. on each share of stock subscribed annually to the State, which shall be in lieu of all other taxes, it shall be entitled annually to a credit therefor upon its assessment of its capital stock as hereinafter provided."

The warrant of law under which the Trustee assumed to act, and to assess the capital stock of the appellee for the year 1896, is to be found in Section 26 of Chapter 1 of the Acts of 1897. That section is as follows:

"*Be it further enacted,* That should it at any time after the assessments have been made, come to the knowledge of the Chairman or Judge of the County Court, the Clerk of said Court, County Trustee, Sheriff, or any other officer or person of any county of this State, that any person, company or firm, or corporation in said county has not been assessed as contemplated by the provisions of this Act, or has been assessed or has paid taxes of an inadequate amount, it shall be the duty of said Chairman, or Judge, Clerk, Trustee, Sheriff, or other officer or person, on motion of District Attorney or Clerk or Revenue Agent for State, to cite said person, company, firm, or corporation, their agent, representative, or attorney to appear before the Trustee or County Court Clerk, in case of merchants' taxes, is hereby authorized and empowered to make proper assessments against such persons, firm, or corporation; and should it appear that said person, firm, company, or corporation did in any manner connive at or purposely evade said assessment, or did knowingly permit an inadequate assessment to be made, said Trustee or County Court Clerk, in case of merchants' taxes, shall

correct said assessment, and in case of *ad valorem* taxes add thereto a penalty of 25 per cent., and cause the whole to be entered upon the tax books for collection."

The contention is, that no assessment could be made under this Act until after its passage, and no retroactive effect could be given to any assessment that might be made under it, and that no assessment was made for 1896 or 1897 at the time prescribed by law, and there being no assessment for 1896, there was no basis for an assessment by the County Trustee for 1897, for city taxes under its charter and the general laws relating to it.

It is said for the city that the remedy of the bank was to apply to the Board of Equalizers and have the assessments set aside. This undoubtedly would be true if the assessment was merely irregular or informal, but not if it was void for want of power to make it. *Ward* v. *Alsup,* 100 Tenn., 746.

It is also said that the assessment may be sustained upon the theory of a picked up assessment, but the whole system of picked up assessments rests upon the idea that property subject to assessment escaped such assessment at the date when it should have been made. In other words, that there was property and a law for its assessment, and it escaped the assessment by being overlooked or undervalued.

We are of the opinion that the assessment of the bank for the city taxes for 1897 was invalid, and not authorized by any legislative provision.

Under the charter and the laws relating to municipal taxes in the city of Memphis, the taxes for 1897 were fixed by the assessments made of property for the year 1896, and upon the property as it then existed, and was then subject to taxation. In other words, the city taxes for 1897 were fixed by the assessment for 1896, and so with each year; they were fixed by the assessment for the preceding year.

Now, when the assessment was made for 1896, there was no legislative authority to assess the capital stock of the bank, and hence it could not then be assessed under the peculiar status of the tax provision of the charter and laws relating to city taxes. While the legislative authority to tax the capital stock of the bank was conferred April 30, 1897, there had been no assessments and no authority therefor for the previous year upon which the assessment for 1897 could be based, and this being so, it was not liable to be assessed by the County Trustee as omitted or picked up property.

The question remains, Is the bank precluded by its payment to the city under the decree referred to from recovering it back from the city?

If it was paid willingly, though irregularly,

and without obligation, it may not be recovered back, but if under protest and duress, it may, if it was illegally assessed and collected.

The decree under which this payment was made is peculiar, in that it contains a provision, in substance, that the payment is made under protest and duress of goods, and that defendant shall have the benefit thereof if he shall elect to sue to recover back said taxes.

In addition to the recitals heretofore set out, the decree further provides as follows:

"And it further appearing to the Court that the city of Memphis claims of the defendant taxes on its capital stock for the year 1897, at the valuation of $217,000, and the bank, by its answer claims that there was no law under which the city of Memphis could claim the aforesaid taxes of it, and that it was exempt from the payment of the said taxes, as well by its charter exemption as by the decision of the Supreme Court of Tennessee in the case of *Union & Planters' Bank* v. *The City of Memphis,* it is now and here agreed that the said taxes, with penalties, commissions, and attorney's fees, amounting to $6,464.-50, may be paid to the said John Alsup, Trustee, under protest, upon the valuation of $217,000, that valuation being fixed and agreed upon as being the same valuation which was fixed by the Board of Equalization as hereinbefore set forth, and that the said Union & Planters' Bank shall

be at liberty, if it so desires, to sue for the aforesaid sum of $6,464.50, and set up its right to recover the same in such proceeding if any "it shall desire to bring."

Considerable proof is taken by the attorneys representing the city and bank of the circumstances under which this decree was drawn, and what was intended by its peculiar provisions, and the testimony is not reconcilable except upon the idea that some provisions in the decree were overlooked and were not intended to be agreed to, especially so much of the decree as recites that the tax was paid under duress and seizure of goods, and that the bank might without prejudice sue to recover it back.

We are of opinion that the recitals in the decree as to the facts upon which it was based, and the rights reserved to the parties, must, as between the city and bank, be considered as conclusive, and there being no effort to set aside the decree for fraud or mistake, and really no allegation of either, the recitals and terms of the decree cannot be contradicted or varied by parol proof.

Nor are the provisions of the decree so repugnant *inter sese* that they cannot stand together, and the former part of the decree cannot be held as a final adjudication of the rights of the city to collect the taxes without regard to

the reservations contained in the latter part of the decree.

It is evident that the decree was a compromise, and virtually a consent decree, and that the recovery of the amount by the city was conceded upon the condition that it might be treated as paid under duress and seizure, and that the bank might, if it saw proper, rely upon that feature in the event it should see proper to sue to recover the taxes back again. Indeed, it appears that one of the main objects of the bank was that there should be a concession, and no question but that the taxes were paid under protest and duress.

We are of opinion that the decree cannot, under the recitals in it and the circumstances shown to exist, be considered as a final adjudication of the right of the city to collect the tax.

This being so, and being of the opinion the assessment for the taxes for 1897 by the County Trustee was not authorized or warranted by law, we think there is no error in the decree of the Court below, and it is affirmed with costs.