NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY COM-
PANY *v.* MARION COUNTY *et al.*

*(Nashville.*    December Term, 1907.)

1. **TAXES.** Requisites of payment of illegal taxes under protest
entitling taxpayer to recover same.

To make a payment of taxes involuntary, it must appear that
the officer authorized to collect the same, and to whom payment
was made, had in his hands process authorizing the seizure
of the person or property of the taxpayer, that such seizure
of one or the other was imminent, and that there was no legal
means of protecting the person or property except by payment,
and under such circumstances payment under protest will save
the rights of the taxpayer to recover, if the tax should be ille-
gal. Mere protest is not sufficient. Mere unwillingness to pay
is not sufficient. (*Post, p.* 352.)

2. **SAME.** Same. Payment before time for distraint is not un-
der duress or protest, and illegal taxes so paid are not recover-
able.

The payment of taxes to the county trustee previous to the time
when he is authorized by statute to distrain for the nonpayment
thereof is not a payment under duress, and illegal taxes so
paid cannot be recovered by the taxpayer merely because he
paid the same under protest and took a receipt so showing.
The question whether the payment was made under duress or
protest is a question of law, arising upon proven facts, and its
solution does not depend upon the county trustee's receipt.
(*Post, pp.* 349-355.)

Acts cited and construed:  Acts 1903, ch. 258, secs. 40, 49,
and 50.

Cases cited and approved:  Bank v. Memphis, 107 Tenn., 66, 68,
74; Railroad v. Commissioners, 98 U. S., 541; Little v. Bowers,
134 U. S., 554, and numerous cases in other jurisdictions cited in
the opinion, on page 355.

Railroad v. Marion Co.

Cases cited and distinguished: Lea v. Memphis, 9 Bax., 103; Bright v. Halloman, 7 Lea, 309, 312; Railroad v. Williams, 101 Tenn., 146, 148; Bank v. Memphis, 107 Tenn., 66, 68, 73, 74; Bank v. Memphis, 116 Tenn., 641, 646, 647.

3. **JUDGMENT.** Not in conformity to pleadings is unauthorized and is no foundation for adjudication of division of costs, when.

Where, in a chancery suit by a taxpayer to recover from a county illegal taxes for two years on the ground that the taxes were paid under protest, and the evidence showed that the payment for the first year's taxes was voluntarily made, and not made under duress nor under protest in law, and that no payment whatever was made for the second year's taxes, which had been illegally levied by the county court, but had never been carried forward into the assessment, a decree by the chancery court perpetually enjoining the county from asserting its right to the taxes for the second year is not justified by the allegations of the bill which sought not an injunction against the collection of the taxes, but a recovery of the taxes upon the false allegation of their payment under protest. The injunction decree was unauthorized, and was no foundation for the adjudication of any costs against the county. (*Post, pp.* 355, 356.)

4. **ATTORNEYS' FEES.** Remandment for assessment against county where application therefor was made in the court below, when.

Where there was an application in the court below for the allowance of attorneys' fees against the county, under the statute applicable to this subject, by the attorneys representing the county in a suit against the county to recover taxes paid under protest, the cause will be remanded for the assessment of these fees. (*Post, p.* 356.)

Code construed, though not cited: Sec. 660, subsec. 1 (S.); sec. 577, subsec. 1 (M. & V.); sec. 520, subsec. 1 (T. & S. and 1858.)

FROM MARION.

Appeal from the Chancery Court of Marion County. —THOS. M. MCCONNELL, Chancellor.

SPEARS & SPEARS and BROWN & SPEARS, for complainant.

CHARLES C. MOON and BYRON POPE, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

The bill in this case was filed for several purposes, but nothing now remains except the question whether the sum of $927.27, taxes paid for the year 1904, under a special assessment for the support of the paupers of the county, can be recovered. The question turns upon whether the payment was a voluntary one. The chancellor held adversely to the complainant, and dismissed the bill as to the tax referred to. From this decree the complainant has appealed and assigned errors.

It is not denied by the county that the assessment was illegal. It interposes, however, the two defenses that the payment was voluntary and that the complainant is barred by laches. We deem it necessary to consider only the first.

The matters proper to be stated are as follows:

By Acts 1903, p. 676, c. 258, sec. 40, the county court clerk was required to make out and deliver to the trust-

ee the tax books on or by the first Monday of October of each and every year.    By section 49 of the act taxes were made due and payable on the first Monday of October in each year.

Section 50 of the act reads as follows:

"That all taxes remaining unpaid on the first day of March, of each year, shall immediately be collected by the county trustee, by distress and sale of any personal property liable therefor; and the tax books, in the hands of such trustee, and delinquent lists to be furnished, as herein provided, to deputy trustees or constables, shall have the force and effect of a judgment and distress warrant, and an execution from a court of record authorizing him to make such distraint and sale."

The tax was paid to J. E. Dyer, deputy trustee of Marion county, on February 23, 1905.    No previous demand had been made by the county.    The authorities of the road at Nashville sent to the company's attorney at Jasper a check for all the taxes due, amounting to $9,581.79.    Within this sum was included the illegal tax which is the subject of the present controversy.    The attorney for the company, with the check in his possession, went to the trustee's office, and asked the deputy trustee to sign a receipt showing that the tax was paid under protest.    The deputy trustee insisted on giving a regular tax receipt.    The attorney thereupon told him that he would accept this, but that he wished him, the deputy trustee, to sign the re-

ceipt showing protest.    The deposition of the attorney then continues:    "Then a conversation ensued in which he asked me the reason for this receipt, and I called his attention to the fact that we were paying part of the money under protest, and we might want to recover, and in order to preserve our rights I wanted the receipt, as written out there, signed to show that the taxes were paid as stated in the receipt."

The receipt referred to is in the following words and figures:

"Received of the Nashville, Chattanooga & St. Louis Ry. the sum of ($9,581.79) nine thousand five hundred and eighty-one and $\frac{79}{100}$ dollars in full settlement of all taxes due Marion county, Tennessee, for the year 1904; the said amount of nine thousand five hundred and eighty-one and $\frac{79}{100}$ ($9,581.79) dollars being paid to me as trustee, under protest, by the Nashville, Chattanooga & St. Louis Railway, as it claims that it only owes the sum of six thousand and forty and $\frac{74}{100}$ ($6,040.74) dollars as taxes for said year to said county.    The payment of the entire sum demanded by the county of Marion in no way is to prejudice the rights of the Nashville, Chattanooga & St. Louis Railway in any action it may desire to institute to recover back the amount it claims to be illegally paid.

"[Signed]                                    R. J. BROWN,
                               "Trustee for Marion Co.,
                                 "Per J. E. DYER, Deputy.

"February 23, 1905."

We do not think that the foregoing payment was made under duress. By the very terms of section 50 the trustee would have no right to distrain before the 1st day of March; or, rather, the power is given by that section, and not in any other, and under a proper construction the right to distrain did not begin until the day fixed in the section quoted. The payment was made before the 1st day of March, and at a time when the trustee had no power to compel payment. The payment was, therefore, not under duress, but was purely voluntary.

Before we can hold a payment of taxes involuntary, it must appear that the officer had in his hands process authorizing the seizure of the person or property of the taxpayer, that such seizure of one or the other was imminent, and that there were no other legal means of protecting the person or property than by payment. Under such circumstances payment under protest will save the rights of the taxpayer to recover if the tax should be illegal. Mere protest is not sufficient. Mere unwillingness to pay is not sufficient.

We are referred to several cases in this State for the proposition that, as soon as the tax books go into the hands of a trustee of a county, they constitute such process as would justify a payment under protest, which would save the right of the taxpayer to sue for the recovery of any amount paid which should turn out to be illegal. All of the cases referred to are mentioned

Railroad v. Marion Co.

in the latest one cited. *Bank* v. *Memphis*, 116 Tenn., 641, 646, 647, 94 S. W., 606. In that case it is said:

"It is deemed necessary to dispose of two preliminary questions. The first of these is that the money was paid voluntarily, and cannot, therefore, be recovered. We think this point is covered by the case of *Bright* v. *Halloman*, 7 Lea, 309, 312. In that case it was held that the tax book was process equivalent to an execution in the hands of the officer, and payment under protest entitled the party to sue for so much as was deemed illegal; that this was true, although the taxes involved were county taxes, and no special provision was made for the payment of this class of taxes under protest, under the act of 1873, carried into Shannon's Code as section 1059. See, also, *Railroad Co.* v. *Williams*, 101 Tenn., 146, 148, 46 S. W., 448, and *Bank* v. *Memphis*, 107 Tenn., 66, 68, 73, 74, 64 S. W., 13. It was also held in a prior case (*Lea* v. *City of Memphis*, 9 Baxt., 103), that, although taxes were voluntarily paid, yet if they were illegal the city might lawfully agree to refund them, and that her paper obligations therefor would be good. On the same principle, we are of opinion that the city, when about to distrain for taxes, may make an agreement with the party paying that such payment is under protest; and it would do right to carry out the agreement in any subsequent litigation instituted concerning such payment."

The point decided in the case quoted from is that a city, when about to distrain for taxes, may make

an agreement with the party paying that such payment is under protest, and that the city would do right to carry out the agreement in any subsequent litigation instituted concerning such payment. In *Lea v. Memphis*, it was held that, although illegal taxes should be voluntarily paid, the city might lawfully agree to refund them. Manifestly these two authorities do not apply, because the deputy trustee would have no right to make an agreement to bind the county. The question whether a payment is made under duress is a question of law, arising on proven facts, and does not depend upon agreement, except in so far as an agreement may estop a governmental body having power to make it. In *Bank v. Memphis*, 107 Tenn., 66, 64 S. W., 13, the recitals in the decree (see pages 68 and 74 of 107 Tenn. [64 S. W., 13]) show that there was a distress warrant in the hands of the officer, and that he was threatening to seize property, and that there was also an agreement on the subject by the city. In case of *Railroad v. Williams*, 101 Tenn., 146, 46 S. W., 448, no facts are recited upon this particular subject, and it throws no light upon the present inquiry. The question of payment under duress, or the contrary, was not under consideration in that case. In the case of *Bright v. Halloman*, 7 Lea, 309, all that is said upon the subject appears in the following paragraph (page 312 of 7 Lea):

"It is insisted the plaintiff ought not to have recovered because his payment was voluntary. We do not

assent to this contention.   The tax book was process equivalent to an execution in the hands of the officer, and payment under protest entitled the party to sue for so much as was deemed illegal."

It does not appear from this excerpt what the contents of the act were under which the  book was made up; but it is clear that it was a book equivalent to an execution, and it is equally certain that the book in the hands of the county trustee of Marion county, when the tax in question was paid, was not equivalent to an execution.   This authority, therefore, does not apply.

The following cases from other jurisdictions fully support the  conclusion we have  reached in the present case:   *Railroad Company* v. *Commissioners,* 98 U. S., 541, 25 L. Ed., 196; *Little* v. *Bowers,* 134 U. S., 554, 10 Sup. Ct., 620, 33 L. Ed., 1016; *Morris* v. *New Haven,* 78 Conn., 673, 63 Atl., 123; *Union Insurance Company* v. *Allegheny,* 101 Pa., 250, 255, et seq.; *Peebles* v. *Pittsburg,* 101 Pa., 304, 308-310, 47 Am. Rep., 714; *Hoke* v. *Atlanta,* 107 Ga., 420, 33 S. E., 412.    And see, also, *Canfield, etc., Lumber Co.* v. *Township of Manistee,* 100 Mich., 466, 59 N. W., 164; *Oakland Cemetery Association* v. *Ramsey County,* 98 Minn., 406, 108 N. W., 857, 109 N. W., 237, 116 Am. St. Rep., 377.

The county assigns error upon the action of  the chancellor in charging it with two-fifths of the costs of the cause.

While this objection comes with very poor grace from the county, since it admits having in its hands, or having received, nearly $1,000 of illegal taxes, which it

refuses to pay back, defending itself on the technical ground above mentioned, still we can see no ground on which to lawfully charge it with any part of the costs. An attempt is made to justify this action of the county court on the ground that there was a levy of the same illegal tax, the pauper tax, for the year 1905. This is true; but that item was never carried forward into the assessment. The chancellor entered a decree perpetually enjoining the county from asserting this tax, and the propriety of that decree is urged as a reason for sustaining, not only the decree itself, but the judgment as to costs. But there were no allegations in the bill that would justify such an injunction. The bill did not seek an injunction as to this matter, but, on the contrary, alleged that this tax of 1905 had been paid under protest, and sought to recover it back. The testimony shows that no such payment was ever made. Under this state of the record, there was no foundation for the injunction decree, nor for the adjudication of any costs against the county.

It results that the decree of the chancellor in favor of the county must be affirmed, and his decree against the county must be reversed.

There was an application in the court below for the allowance of attorney's fees against the county, under the statute applicable to this subject, by the attorneys representing the county. For the assessment of these fees the cause will be remanded to the chancery court of Marion county.

The complainant will pay the costs of this court and of the court below.