JORGENSEN-BENNETT MFG. CO. *v.* WILL S. KNIGHT *et al.**

*(Nashville.* December Term, 1927.)

Opinion filed March 31, 1928.

Appeal pending in United States Supreme Court.

1. INTERSTATE COMMERCE. MILLING IN TRANSIT. EXCISE TAX.

A corporation having a plant in this State which receives lumber shipped from without the State under bills of lading which permitted the lumber to be dry kilned, surfaced and re-sawed and re-shipped to another State, is not doing an interstate business so as to avoid the payment of the excise tax. (Post, p. 582.)

2. INTERSTATE COMMERCE. EXCISE TAX.

The Legislature imposed the excise tax not upon interstate commerce, nor upon business beyond the State, but upon the privilege of exercising the corporate privilege in this State, and adopted as the measure net earnings from business done in the corporate capacity, by the corporations exercising its powers in Tennessee. (Post, p. 583.)

Citing: Bank v. Senter, (Nashville, December term, 1925).

3. INTERSTATE COMMERCE. INTRASTATE BUSINESS. REGULATION.

Subject to constitutional limitations, the State has the power to regulate the doing of local business within its border. (Post, p. 584.)

Citing: Pullman Company v. Kansas, 216 U. S. 56, 54 L. Ed., 378.

4. INTERSTATE COMMERCE. INTRASTATE BUSINESS. TAXATION.

When the business sought to be taxed is wholly within the State, and said business is but a mere incident to interstate business,

such fact furnishes no obstacle to the valid taxation by the State of the business which is entirely local. (Post, p. 584.)

Citing: Express Company v. Minnesota, 223 U. S., 335, 56 L. Ed., 459; Osborne v. Florida, 164 U. S., 650, 41 L. Ed., 486; New York ex rel. Penn. Railroad Co. v. Knight, 192 U. S., 21, 48 L. Ed., 325; 12 C. J., 97; Munn v. Illinois, 94 U. S., 113, 24 L. Ed., 77; Budd v. N. Y., 143 U. S., 517, 36 L. Ed., 247; N. Y. L. E. & W. R. R. v. Pennsylvania, 158 U. S., 431, 439, 39 L. Ed., 1945; U. S. Express Co. v. Minnesota, 223 U. S., 335, 56 L. Ed., 459; Henderson Bridge Co. v. Kentucky, 166 U. S., 150, 41 L. Ed., 953; Powder Co. v. 'Goodloe, 131 Tenn. (4 Thomp.), 490; Texas Transport & Terminal Co. v. New Orleans, 264 U. S., 150, 68 L. Ed., 611; McCall v. California, 136 U. S., 104, 34 L. Ed., 391.

## 5. TAXATION. PENALTIES. DURESS.

Under the provisions of an Act levying a tax and providing for a fine for willful failure or refusal to pay, only a deliberate and purposeful, as opposed to accidental and unintentional, failure to pay was intended, and a belief of non-liability, based on a mistake of law, does not acquit the taxpayer, the provisions of the Act for the penalty being explicit, and since the payment might have been made at any time under protest so as to relieve the paying taxpayer from the defense to his suit to recover of voluntary payment. (Post, p. 586.)

---

*Headnotes 1. Commerce, 12 C. J., sections 126, 156; 2. Taxation, 37 Cyc., p. 1257; 3. Taxation, 37 Cyc., p. 1183.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— HON. M. C. KETCHUM, Judge.

BROWN & WALDAUER and CHAS. GLASCOCK, for Jorgensen-Bennett Mfg. Co.

BATES, SHEA & FRAZER, for Knight.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Complainant sues to recover excise taxes, interest and penalties collected under Chapter 21, Acts of 1923, paid under protest. The statute imposes an annual tax equal to three per centum of the net earnings for the preceding year on all corporations and joint stock associations, "arising from business done wholly within the State," specifically exempting "earnings arising from interstate commerce."

Complainant is a Tennessee corporation, buying, manufacturing and selling lumber, and its liability for the excise tax on profits thus generally earned is conceded and has been discharged. However, it is charged that it also does business as to which the exemption applies, described in the bill as follows: "It receives lumber from various points outside of the State, which is shipped by the owners on through bills of lading to points north and east of Memphis and outside of the State of Tennessee; that much lumber is stopped *in transit* in the City of Memphis for the purpose of being re-manufactured in the process of which it is diminished in weight and is fitted for final delivery in the shape in which it had been contracted to be delivered by the shipper; that such lumber is manufactured in Memphis, loaded upon cars, and shipped out of Memphis on the same through bill of lading upon which it originally started. The complainant avers that this business and every operation attending same is interstate commerce business, upon which the

State of Tennessee has no right to impose any burden or to levy any tax for the privilege of doing such business. It avers and shows to the Court that the excise tax upon the earnings made by it in this business is a burden imposed upon interstate commerce; that the imposition of such a tax by the State of Tennessee is contrary to the Constitution and Statutes of the United States; and that it is also contrary to the Constitution and Statutes of the State of Tennessee, and that such business is expressly exempt from excise tax under the provisions of Chapter 21 of the Acts of 1923.''

The insistence is that, ''in the material thus handled the complainant has no title or interest and the work upon said lumber is a part of an interstate movement of the same from the point of origin in the States of Arkansas, Louisiana and Mississippi to the point of final destination in States north and east of the State of Tennessee.'' A demurrer was sustained by the Chancellor and this appeal is from his decree.

(1) The question thus presented, as well stated by the Chancellor, is ''whether or not the business of the complainant in kiln-drying, surfacing and re-sawing lumber shipped from a point outside of Tennessee, through Tennessee, to points beyond the limits of Tennessee, on through bills of lading, and stopped in Tennessee only for this milling *in transit* operation, is interstate business, and the profits arising therefrom are profits arising from interstate business.''

Conceding that shipments from one State to another are interstate shipments and constitute interstate commerce the Chancellor says, ''but it does not follow from this that the complainant is engaged in an interstate business or that its profits from the services rendered by it

in kiln-drying, surfacing and re-sawing the lumber mak-
ing up such shipments are profits arising from interstate
commerce; its business is done 'wholly within the State,'
and its profits from said business are profits from busi-
ness done 'wholly within the State,' and are therefore
taxable. Under the language of the Act the net earnings
arising from business done wholly within the State are
taxable; all of complainant's business is done in this
State, and the fact that this part of its business is for
a milling *in transit* service rendered to lumber moving
ing in interstate commerce does not alter the fact that
its business is done here, and that its earnings are for
services rendered here. The exemption from the tax on
the earnings arising from interstate commerce necessarily
means earnings arising from business done in interstate
commerce. The complainant's business is not an inter-
state business; the entire service of kiln-drying, re-saw-
ing and surfacing this lumber is done here; complainant
has no interest in the shipment itself, and its business
for which this tax was assessed is for a service rendered
here to interstate shipments of lumber, for the purpose
of lessening the weight and bulk of the shipments and
thereby reducing the freight cost.''

We find no error in this reasoning and conclusion. It
is, in effect, supported by our own decisions, those of
other States and of the United States Supreme Court,
although no case dealing with identical facts is cited.

(2) Construing the Act now before us, in his second
opinion, pp. 10-11, in *Bank* v. *Senter,* (Nashville, Decem-
ber term, 1925) Mr. Justice Cook said:

"The local business of a corporation, either foreign or
domestic, may support an excise measured by any rea-
sonable method, if interstate commerce, and property

beyond the State is not taxed. The Legislature imposed this tax, not upon interstate commerce, nor upon business beyond the State, but upon the privilege of exercising the corporate privilege in this State, and adopted as the measure net earnings from business done in the corporate capacity, by the corporation exercising its powers in Tennessee.

*(3)* "The State may impose a license tax for doing domestic business within its territorial jurisdiction, although the property involved may have come from another State, or the contract relating to the business may have been made in another State, and although the business carried on within the State may involve deliveries outside of the State."

Controlling general principles have been laid down by the United States Supreme Court: "Subject to constitutional limitations, a State has the power to regulate the doing of local business within its borders." *Pullman Co.* v. *Kansas,* 216 U. S., 56, 54 L. Ed., 378.

*(4)* "A State has the right to tax property, although it is used in interstate commerce." *U. S. Express Co.* v. *Minn.,* 223 U. S., 335, 56 L. Ed., 459. "When the business sought to be taxed is wholly within the State, and said business is but a mere incident to interstate business, such fact furnishes no obstacle to the valid taxation by the State of the business which is entirely local. So long as regulation as to license or taxation does not refer to, or is not imposed upon the business which is interstate, there is no interference with interstate commerce." *Osborne* v. *Florida,* 164 U. S., 650, 41 L. Ed., 486. The last quotation has immediate application here. The business of complainant, earning the profits here taxed, was not only done wholly in this State, by a local

corporation, but it does not appear that the charge made for the work done on the shipments to which the excise tax applied laid any burden upon the transportation of the manufactured product. The service rendered to the owners and shippers was "all independent local service," subject to State control and taxation, even more clearly than the cab service in New York City, considered in *New York ex rel. Penn. Railroad Co.* v. *Knight,* 192 U. S., 21, 48 L. Ed., 325. The above case is cited in 12 C. J., 97, for this proposition. "Whenever the subjects of taxation can be separated, so that that which arises from interstate commerce can be distinguished from that which arises from commerce wholly within the State, the distinction will be acted on by the Courts, and the State will be permitted to collect the tax arising in commerce solely within its own territory." It is to be observed that while in *Penn. R. Co.* v. *Knight, supra,* there was an element of actual transportation involved, here, although the commodity was in a sense in the course of transportation under a through bill of lading, the service performed on it was in no sense transportation.

In the Warehouse cases (*Munn* v. *Illinois,* 94 U. S., 113, 24 L. Ed., 77, and *Budd* v. *N. Y.,* 143 U. S., 517, 36 L. Ed., 247) the main propositions, upon which the Court divided, and not pertinent here, but in the opinions in both of these cases the Court took occasion to say, in substance, that the warehousing business, although incidentally connected with interstate commerce, handling, in part, grain coming from, or destined to, other States, was subject to state regulation and taxation. A case relied on by the Chancellor, and which appears to be in point, is *N. Y. L. E. & W. R. R.* v. *Pennsylvania,* 158 U. S., 431, 439, 39 L. Ed., 1045. And see *U. S. Express Co.* v. *Min-*

*nesota,* 223 U. S., 335, 56 L. Ed., 459, and *Henderson Bridge Co.* v. *Kentucky,* 166 U. S., 150, 41 L. Ed., 953. Also, the discussion of kindred questions in *Powder Co.* v. *Goodloe,* 131 Tenn., 490.

Among authorities relied on for appellant is *Texas Transport & Terminal Co.* v. *New Orleans,* 264 U. S., 150, 68 L. Ed., 611, the ship broker case. The Court invoked and applied the established rule that the state or municipality may not impose a tax upon persons selling commodities of nonresidents to be transported into the State, or upon persons rendering services in securing the transportation of freight or persons interstate, following *McCall* v. *California,* 136 U. S., 104, 34 L. Ed., 391, in which it was held that the business of the agent constituted a method of securing passenger traffic interstate. These rules do not apply here, the services rendered to which the tax attaches not being rendered in securing, or in relation to the *movement* of the lumber at all. Nor is the tax laid on the article or property which counsel correctly insist was the subject of transportation. It cannot, we think, be maintained that work done on this lumber, while in Tennessee, burdened the movement of it, and we think it therefore becomes immaterial that the lumber was in course of transit and a subject of interstate commerce, as insisted by learned counsel, supported by authorities cited. Without further elaboration, we are not of opinion that the tax has been collected on earnings arising from interstate commerce.

*(5)* A plausible insistence is made that a recovery of penalties paid should be decreed, based chiefly on the view that the complainant could not have earlier so paid under protest as to entitle it to sue to recover; that it was held by the State in such a position that it could

not have avoided the penalties without forfeiting its right to test its liability, under the holding in *Railroad* v. *Marion Co.,* 120 Tenn., 347.

The Act of 1923 fixes a penalty of one per cent per month for failure to pay excise taxes after they are due. No distress warrant was provided for in the original act. Although requested to do so, the tax collecting officers brought no suit. Claims accumulated for the years 1923, 1924, 1925 and 1926. By the amendment of 1927 (Chapter 45) provision was made for the issuance of distress warrants and not until then did the State act. It is urged that no penalties should be allowed until such time as distress warrants were issued, and the taxpayer placed in position to protect himself against the claim of voluntary payment. When the payment was finally made, of the total of $4875.57, approximately $1000 represented penalties.

The equities would appear to be with complainant on this issue, and in a suit in equity brought against the taxpayer the delay and circumstances might justify the court in refusing affirmative relief as to these penalties, when voluntary payment had been withheld in apparent good faith, under the advice of counsel. "He who seeks equity must do equity." But no authority is cited and none occurs to us for giving to complainant a decree for recovery thereof. Under the maxim above quoted, "an equitable right may be secured to the defendant which could not be obtained by him in any other manner—which he could not have secured by a suit brought for that purpose." Gibson's Suits in Chancery, p. 33. Estoppel, laches and limitations, if otherwise applicable, are all defensive only. Moreover, the Act of 1923 makes it a misdemeanor punishable by fine of from $10 to $1000

to fail or refuse to pay the tax when due. An element of duress arises, akin to that discussed in *Powder Co.* v. *Goodloe,* 131 Tenn., 490, wherein *Railroad* v. *Marion Co., supra,* is distinguished and limited. And in *Box Co.* v. *Lauderdale Co.,* 146 Tenn., 413, 416, this Court further restricts the effect of the holding in *Railroad* v. *Marion County,* (and *Railroad* v. *Hamilton Co.,* reported in the same volume) saying: "Certain language used in these cases is relied on here by defendants, but nothing more was decided in either case than that taxes paid before they become delinquent were not paid under duress and could not be recovered." While the language of the Act relating to fine is "*wilful* failure or refusal," we think only a deliberate and purposeful, as opposed to accidental and unintentional, failure to pay is what is intended, and that a belief of non-liability, based on a mistake of law, does not acquit. The provision of the Act for the penalty is explicit."

It follows that payment might have at any time been so made under protest as to relieve the paying taxpayer from the defense to his suit to recover of voluntary payment.

It results that the decree of the Chancellor must be affirmed.

Appeal pending in the Supreme Court of United States.