Volunteer State Life Insurance Co. *v.* A. S. Caldwell, State Insurance Commissioner.*

(*Nashville.* December Term, 1927.)

Opinion filed June 30, 1928.

### 1. INSURANCE.   REINSURANCE.   RELATION OF PARTIES. BROKER.

"A contract of reinsurance is peculiar in its character, and differs from the ordinary policy of insurance. It creates no privity between the reinsurer and the party originally insured; it is simply an agreement to indemnify the assured, partially or altogether, against a risk assumed by the latter in a policy issued to a third party. In such a case 'the assured is not the owner of the property at risk,' and has 'no relation to it except as insurer under the original policy.' But in that relation the party issuing the original policy has an insurable interest which will support a contract intended to indemnify him against the hazard he has assumed." (Post, p. 245.)

Citing: Royal Insurance Co. v. Vanderbilt Insurance Co., 18 Pick., 264; Gantt v. American Insurance Co., 68 Mo., 533; Commercial Mutual Insurance Co. v. Detroit F. & M. Insurance Co., 38 Ohio St., 16.

### 2. INSURANCE.   REINSURANCE.   RELATION OF PARTIES. BROKER.   TAXATION.

Where an insurance company authorized to do business in Tennessee enters into a contract whereby a foreign insurance company, not authorized to do business in Tennessee, undertook to reinsure certain risks that the former had assumed, there is no such privity between the reinsurer and the original insured as would make the reinsured a broker and subject it to the tax imposed on

157 Tenn.—16.

insurance brokers or to subject the reinsurer to the premium tax imposed on foreign insurance companies doing business in this State. (Post, p. 245.)

Citing: Acts 1893, ch. 160, sec. 19; Acts 1895, ch. 160, sec. 45; Acts 1907, ch. 160, sec. 30.

3. TAXATION. PAYMENT UNDER DURESS.

Where the Insurance Commissioner exhibits an opinion from the Attorney-General in which he advises the Commissioner, if the tax claimed was not paid that he "should at once take steps to collect this money (a tax) and at the same time proceed against the company to cancel its license and forbid it doing further business in the State," a revocation of complainant's license to do business was, therefore, imminent, even though the opinion of the Attorney-General was erroneous and the insurance company paid the tax under duress, such payment was not voluntary, because if the company had been liable for the tax and had failed to pay it, it would have been subject to a fine. (Post, p. 247.)

Citing: Jorgensen-Bennett Mfg. Co. v. Knight, 156 Tenn. 579; Bank of Commerce & Trust Co. v. Senter, 149 Tenn. (22 Thomp.), 569; St. Louis Basket & Box Co. v. Lauderdale County, 146 Tenn. (19 Thomp.), 413; Power v. Goodloe, 131 Tenn. (4 Thomp.), 490.

*Headnotes 1. Insurance, 33 C. J., section 716; 2. Insurance, 32 C. J., section 31; 3. Taxation, 37 Cyc., p. 1181.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —HON. JAMES B. NEWMAN, Chancellor.

MILLER, MILLER & MARTIN and BASS, BERRY & SIMS, for appellant.

L. D. SMITH, Attorney-General, and CORNELIUS & WADE, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

The complainant, the Volunteer State Life Insurance Company, is a corporation duly organized under the laws of Tennessee with its home office at Chattanooga and is carrying on the business of life insurance in Tennessee and in other States. The defendant, A. S. Caldwell, is the Insurance Commissioner of the State of Tennessee.

The complainant entered into a contract with the Pittsburg Life & Trust Company, a Pennsylvania corporation, whereby the latter concern undertook to reinsure certain risks that the complainant had assumed. Under the contract between the two insurance companies each risk which the complainant reinsured with the Pennsylvania corporation was reinsured separately upon terms set out in a written agreement. By said agreement the Pennsylvania corporation allowed to the complainant what was called a commission upon every contract of reinsurance undertaken by the former corporation for the complainant. A considerable amount of business of this character was done between these two concerns.

The Pennsylvania corporation had not qualified to do business in Tennessee according to the provisions of Chapter 160 of the Acts of 1895, and other statutes regulating the entry of foreign insurance companies into this State. The contracts of reinsurance, however, assumed by the Pennsylvania corporation for the complainant were all negotiated by mail, executed in Pittsburg, Pa., and remittances sent through the mail by the complainant.

Section 19 of Chapter 160 of the Acts of 1895 provides that every foreign insurance company doing business in

Tennessee shall pay into the Treasury of the State the sum of $2.50 upon each $100 of gross premiums upon its Tennessee business.

Section 45 of Chapter 160 of the Acts of 1895 provides that each and every insurance broker shall pay into the Treasury of the State the same tax on gross premiums upon all policies procured by him as insurance companies authorized to do business here are required to pay. Section 40 and other sections of said Act make provision for licensed brokers who may legally procure insurance for customers from companies not authorized to do business in the State under conditions named.

Acting apparently upon the assumption that in the transactions between the complainant and the Pennsylvania corporation, the complainant was in reality something like a broker procuring for its customers insurance from a company not authorized to do business in Tennessee, the defendant Insurance Commissioner demanded from the complainant the two and one-half per cent tax above mentioned upon gross premiums on all policies issued to it by the Pennsylvania corporation. The Insurance Commissioner was supported in this demand by an opinion of the Attorney-General, and the complainant paid to the Insurance Commissioner the amount demanded, under protest as it claims, although there is a controversy as to whether the payment was truly made under duress. This suit was brought to recover the payment so made.

A demurrer was interposed by the Insurance Commissioner, which was overruled by the Chancellor, and there was a decree below for the complainant. The Insurance Commissioner has appealed to this Court.

(*1*) In the case of *Royal Insurance Company* v. *Vanderbilt Insurance Company,* 102 Tenn., 264, this Court said:

"A contract of reinsurance is peculiar in its character, and differs from the ordinary policy of insurance. It creates no privity between the reinsurer and the party originally insured (*Gantt* v. *Amer. Ins. Co.,* 68 Mo., 533); it is simply an agreement to indemnify the assured, partially or altogether, against a risk assumed by the latter in a policy issued to a third party (*Commercial Mut. Ins. Co.* v. *Detroit F. & M. Ins. Co.,* 38 Ohio St., 16).

"In such a case 'the assured is not the owner of the property at risk,' and has 'no relation to it except as insurer under the original policy.' But in that relation the party issuing the original policy has an insurable interest which will support a contract intended to indemnify him against the hazard he has assumed."

(*2*) The policies issued by the Pennsylvania corporation to the complainant were all directly payable to the complainant and were based upon policies issued by the complainant to its customers. There was no privity between the patrons of the complainant and the Pennsylvania corporation.

The subject of each risk assumed by the Pennsylvania corporation was not the life of any patron of the complainant but was the liability of the complainant under *its* contract with such patron respecting his life. The complainant, having insured the life of a customer, had an insurable interest in the subject-matter which it in turn was entitled to insure by way of indemnity to itself.

We are unable to see how the complainant could be said to have acted as a broker or as an agent in the transaction detailed, or be liable for any tax imposed

upon a broker or upon an agent. Three parties must be involved in every transaction in which a broker or an agent figures. In the case before us the patrons of the complainant had no interest in the contracts of reinsurance between the complainant and the Pennsylvania corporation. These contracts were negotiated by the complainant in its own interest and on its own account.

Section 30 of Chapter 160 of the Acts of 1907, authorizes any person to consummate a contract of insurance with a company not qualified to do business in this State on behalf of himself. We think the complainant has done no more than this. Having issued the original policy, the complainant had an insurable interest in the life of its customer, which insurable interest it was entitled to insure for its own protection.

Some other Statutes are referred to by the Insurance Commissioner, but they do not seem to us to have any bearing on the question presented and do not require discussion.

We do not find any basis for the contention that the arrangement between the complainant and the Pennsylvania corporation was a subterfuge whereby the latter company was doing business in Tennessee without obtaining license, and whereby the complainant was acting as its agent. In the contract fixing the rates for this reinsurance entered into between the complainant and the Pennsylvania corporation it was set out that complainant was to be allowed a certain commission upon each policy. Apparently the Pennsylvania corporation used a form of contract such as insurance companies ordinarily enter into with their agents. The intention no doubt was to charge the complainant for each policy of reinsurance the net premium the Pennsylvania corpo-

ration would have received had it issued such policy directly. The use of the word commission was inappropriate. The complainant was to sell no insurance for the Pennsylvania corporation to third persons upon which complainant would be entitled to commissions, as that word is ordinarily used.

As noted in *Royal Insurance Company* v. *Vanderbilt Insurance Company,* a careless use of printed blanks, applicable to direct insurance, is sometimes confusing where reinsurance is involved.

We have in this State a number of life insurance companies, organized under our laws, doing a safe and prosperous business. Most of these companies are, as yet, small, and sound policy requires that they reinsure a part of their risks. Such a course on their part is commendable and should not be penalized by any forced construction of our statutes.

(3) Another argument on behalf of the Insurance Commissioner is that this payment was not made under duress by the complainant and consequently cannot be recovered. The Insurance Commissioner, as stated above, proceeded against the complainant, under advice of the Attorney-General and exhibited to the complainant a written opinion from the Attorney-General in which he advised the Commissioner, if the tax claimed was not paid, that he "should at once take steps to collect this money and at the same time proceed against the company to cancel its license and forbid it doing further business in the State."

It is urged that the Insurance Commissioner would not have been authorized under the law to revoke the license of complainant to do business merely on account of the failure to pay this tax. However that may be,

the Insurance Commissioner was advised by the Attorney-General that this procedure should be followed and such procedure would no doubt have been followed, whether proper or not. A revocation of the complainant's license to do business was, therefore, imminent.

Certainly if the complainant had been liable for the tax involved and had failed to pay it, it would have been subject to a fine of not more than $500.

Upon these facts, we do not think the payment was voluntary. The matter of duress in the payment of taxes has been discussed in several late cases and no more need be said on this subject now. *Jorgensen-Bennett Mfg. Co.* v. *Knight,* 156 Tenn. 579; *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn. (22 Thomp.), 569; *St. Louis Basket & Box Co.* v. *Lauderdale County,* 146 Tenn. (19 Thomp.), 413; *Power* v. *Goodloe,* 131 Tenn. (11 Thomp.), 490.

We find no error in the action of the Chancellor and his decree must be affirmed.