[No. 26674.   Department One.   January 10, 1938.]

THE PORT OF PORT ANGELES et al., *Appellants*, v.
HAROLD E. HENNEFORD et al., *Respondents*.[1]

*Fairbrooks & Williams* and *Hayden, Metzger &
Blair,* for appellants.

*The Attorney General* and *E. P. Donnelly, Assistant,*
for respondents.

MAIN, J.—This action was brought to prohibit the
defendants, as members of the tax commission of this
state, from collecting the business and occupation tax
provided for under title 2, chapter 180 of the Revenue
Act of 1935, p. 709.   The trial was to the court with-
out a jury, and resulted in a dismissal of the action,
from which the plaintiffs appeal.

[1]Reported in 74 P. (2d) 1025.

Seven or eight of the appellants, as their respective names indicate, are municipal corporations organized and existing under the laws of this state. The remaining appellants are private corporations. All of them are engaged in providing and operating marine terminals upon the navigable waters of this state. Their physical properties consist of docks, piers, wharves, elevators and other facilities incidental to those named. Cargo moving through these terminals consists of goods arriving by water from foreign countries and from other states for transshipment by water, rail or truck, and of goods received by rail and truck carriers for transmission by water carriers to foreign countries and other states.

The business of the appellants, while not in all respects the same, is, in general, similar. The operations are something like this: When a steamship arrives from a foreign port or from another port of this country, it anchors at one of the docks or piers. It thereupon contracts with a stevedoring company to lift the cargo from the hold of the vessel onto the dock, or it may contract for the service of the stevedores.

The dock company receives the goods at the ship's tackle, which is the place where they come to rest on the dock or pier. It thereupon gives to the steamship company a receipt for the goods, which it then holds on its dock or in its warehouse or refrigerator plant, as the case may be, until a car is spotted on the railway track adjacent to the pier, to be loaded with these goods. After the goods are loaded, the dock company takes a receipt from the railway company for the same. The compensation of the dock company is charged against the goods. It may be paid ultimately by either the incoming or the outgoing carrier, or the consignor or consignee of the goods,

but in this the dock company is not interested. While the goods are upon the dock or in the warehouse, they are at the risk of the dock company.

Most of the business of the appellants is business that comes from foreign ports or from ports of other states in this country for transshipment to points other than in the state of Washington, or shipments coming into the port by rail for transshipment to foreign countries or to other states. The dock companies, however, do some business which is purely local in character.

When goods are shipped, as above described, the bill of lading does not consign them through any particular dock or pier. The contract for their unloading and reloading is made by the incoming carrier. The docks or piers handle all business offered from whatever source to the extent of their capacity.

The question is whether this business is subject to the business and occupation tax of this state, under the law above mentioned. The position of the appellants is that it is an operation in interstate commerce and, therefore, not subject to the tax. The position of the respondents, of course, is that it is subject to such tax, and is not such a burden upon interstate commerce, if it be an operation within that commerce, as would justify the holding of the law unconstitutional.

There is no formula or standard by which it can be determined in all cases whether such a tax, as here mentioned, affects interstate commerce so directly and immediately as to amount to a genuine and substantial burden or regulation of that commerce, or whether it affects interstate commerce only incidentally or remotely.

In *Hump Hairpin Mfg. Co. v. Emmerson*, 258 U. S. 290, 42 S. Ct. 305, 66 L. Ed. 622, it is said:

"The turning point of these decisions is, whether in its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of, or restraint upon it, or whether it affects it only incidentally or remotely so that the tax is not in reality a burden, although in form it may touch and in fact distantly affect it.

"No formula has yet been devised by which it can be determined in all cases whether or not such a tax is valid, and, applying the repeated declaration of this court, in the cases cited and in many others, that the question is inherently a practical one, depending for its decision on the special facts of each case, we are clear that the tax here involved falls within the excepted class described, even though the business done with residents of States other than Illinois be regarded as interstate."

In *Gillespie v. Oklahoma*, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338, it is said:

"The criterion of interference by the States with interstate commerce is one of degree. It is well understood that a certain amount of reaction upon and interference with such commerce cannot be avoided if the States are to exist and make laws."

In the case of *Puget Sound Stevedoring Co. v. State Tax Commission*, 189 Wash. 131, 63 P. (2d) 532, the question was whether the earnings of the stevedoring company from its operation in removing the goods from the hold of the vessel to the dock or pier were subject to the business or occupation tax of this state, under the law above mentioned, and it was there held that it was, because it was not such a substantial regulation or burden upon interstate commerce as to justify the holding of the law unconstitutional. That case was taken to the United States supreme court (302 U. S. 90, 58 S. Ct. 72), and the opinion of this court was set aside. It was there held (a) that:

"The business of loading and unloading being interstate or foreign commerce, the state of Washington is

not at liberty to tax the privilege of doing it by exacting in return therefor a percentage of the gross receipts."

and (b) that:

"The business of appellant, in so·far as it consists of supplying longshoremen to shipowners or masters without directing or controlling the work of loading or unloading, is not interstate or foreign commerce, but rather a local business, and subject, like such business generally, to taxation by the state."

From the holding there made, it follows that earnings of a dock company for transporting goods from the end of the ship's tackle to railway car or truck, or transferring them from a railway car or truck to the ship's tackle, must likewise be an operation in interstate commerce. There was this further statement in the opinion of the supreme court of the United States:

"What was done by this appellant in the business of loading and unloading was not prolonged beyond the stage of transportation and its reasonable incidents."

From this statement, it would naturally be inferred that, if the goods remained upon the dock or pier for a time prolonged beyond the stage of transportation and its reasonable incidents, then compensation for such services would be subject to the state tax. Compensation for warehousing and cold storage, not an incident of transportation, would be subject to the tax. *Jorgensen-Bennett Mfg. Co. v. Knight,* 156 Tenn. 579, 3 S. W. (2d) 668, 60 A. L. R. 393.

The judgment of the trial court in dismissing the action in the present case cannot be sustained, and, when the case returns to the superior court, that court may take testimony, if necessary, to determine what portion of the income of the respective appellants

comes from interstate commerce and what portion comes from warehousing and cold storage services.

The judgment will be reversed, and the cause remanded for further proceedings as herein indicated.

STEINERT, C. J., BLAKE, HOLCOMB, and SIMPSON, JJ., concur.