S. C. AUSTIN *v.* P. A. SHELTON, County Court Clerk, et al.[1]

(*Nashville.* December Term, 1909.)

1. **STATUTES.** Legislative intent determined from practical construction of previous, kindred, and contemporaneous legislation, when.

The determination of the question whether a beverage or liquid which contains a small percentage of alcohol, but unquestionably nonintoxicating, is a liquor in the sense of the revenue law (Acts 1909, ch. 479, sec. 4) imposing a privilege tax upon liquor dealers, depends upon the legislative intent as expressed in the statute imposing the tax, construed in the light of previous revenue laws imposing privilege taxes upon liquor dealers, and the practical construction given to them by those whose duty it was to enforce them, and by the courts of the State, and kindred and contemporaneous legislation concerning the sale of liquors, enacted from time to time by the general assembly. (*Post, p.* 639.)

2. **SAME.** Same. Privilege tax imposed upon "liquor dealers" is construed to apply to sellers of intoxicating liquors, and not to sellers of nonintoxicating liquors.

Where a statute (Acts 1909, ch. 479, sec. 4) imposes a privilege tax upon liquor dealers, and defines liquor dealers to be "every person, company, or firm selling spirituous, vinous, or malt liquors, beer or ale, or intoxicating bitters, or any medicated or adulterated cider, or any social club or association, incorporated or otherwise, which handles such liquors for sale," and expressly provides that nothing in the statute "shall authorize or legalize the sale of liquors," when interpreted according to the rule stated in the foregoing headnote, and in the light of such previous revenue laws, their practical construction, and in the light of the kindred and contemporaneous legislation, the terms "liquors" and "liquor dealers" must be construed as limit-

---

[1]Upon the general question, what liquors are within statutory restrictions as to the sale of spirituous, vinous, fermented, and other intoxicating liquors, see note to Lemly v. State (Miss.), 20 L. R. A., 645.

Austin v. Shelton.

ed to beverages and persons selling beverages containing a sufficient quantity of alcohol to make the beverage intoxicating, so that a vendor of soft drinks containing a small percentage of alcohol, insufficient in quantity to render the liquors intoxicating, is not liable for such tax.

Acts cited and construed: Acts 1909, ch. 479, sec. 4.

Other acts cited as in aid of the construction of said act are as follows: Acts 1877, ch. 23; Acts 1899, ch. 161; Acts 1903, ch. 257; Acts 1907, ch. 541; Acts 1909, chs. 1, 14, and 385.

Code cited and construed: Secs. 6785-6787, 6795, 6797 (S.); secs. 5672, 5673, 5681 (M. & V.); secs. 4862, 4863 (T. & S. and 1858).

Cases cited and approved: Grills v. Mayor, 8 Bax., 247; State v. Rauscher, 1 Lea, 96; Webb v. State, 11 Lea, 662; Hatcher v. State, 12 Lea, 367; Harrison v. State, 96 Tenn., 548; Webster v. State, 110 Tenn., 506; Pressly v. State, 114 Tenn., 535; Foster v. Speed, 120 Tenn., 470.

3. **SAME. Same. Same. Extension of statute so as to include dealers in nonintoxicating liquors would be judicial legislation.**
While, as an abstract proposition, any beverage which contains any spirituous, vinous, or malt liquor, however small the percentage thereof may be, comes within the letter of the statute imposing privilege taxes upon liquor dealers, it does not come within its intent and spirit, as shown in the foregoing headnotes, and to extend the statute so as to include dealers in nonintoxicating liquors would be judicial legislation. (*Post, p.* 644.)

4. **INTOXICATING LIQUORS. Dealers subject to privilege tax; question of proof in each case.**
The beverage sold, to make the seller liable for the privilege tax imposed upon liquor dealers, must be one that is intoxicating; and whether or not it is intoxicating is a question of fact, to be determined upon the proof in each and every case in which it arises, just as if the sale was one of bitters, which does not make the dealer liable, unless the bitters are intoxicating. (*Post, p.* 645.)

Austin v. Shelton.

5. SAME. Prima facie presumption that licensee under a federal license is a liquor dealer is rebutted by proof that the liquors sold were nonintoxicating.

   The provision in the statute that the procuring of a United States revenue license authorizing the licensee to become a wholesale or retail liquor dealer shall be *prima facie* evidence that the licensee is such a liquor dealer makes such license only *prima facie* evidence of the fact, which may be rebutted by proof, admission, or concession that the beverages sold were nonintoxicating, which fully meets and overcomes such *prima facie* case. (*Post, pp.* 638, 645.)

Acts cited and construed: Acts 1909, ch. 479, sec. 4.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

JNO. J. VERTREES, J. C. BRADFORD, W. C. CHERRY, FRANK LANKFORD, HILL MCALISTER, and J. M. ANDERSON, for complainant.

ATTORNEY-GENERAL CATES, PITTS & MCCONNICO, J. N. FISHER, E. E. BARTHELL, and SAMUEL N. HARWOOD, for defendants.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

This case involves the liability of complainant for a privilege tax imposed upon liquor dealers by the general revenue law, chapter 479, Acts 1909.

The provision of this statute imposing this tax, and defining who are liquor dealers, is as follows:

"Sec. 4.   Be it further enacted, that each vocation, occupation, and business hereinafter named in this section is hereby declared to be a privilege, and the rate of taxation of such privilege shall be as hereinafter fixed, which privilege tax shall be paid to the county court clerk as provided by law for the collection of revenue.   .   .   .

"Liquor Dealers.

Wholesale, and, in addition, taxed as other merchants ....................  ................$500 00
Retail, taxed as other merchants, and, in addition, shall pay as follows:
In cities, taxing districts, or towns of 6,000 inhabitants or over, each, per annum ........ 500 00
At any place, city, taxing district or town of less than 6,000 inhabitants, each per annum .... 500 00
Persons selling beer or any quantity of liquors on steamboats, flatboats, or any other vessel or watercraft or from railroad cars, shall pay a tax, each, in lieu of all other taxes to be paid in any county they may elect, per annum .... 500 00

"Persons selling liquors in quantities of one quart or more, except manufacturers selling to dealers in original packages of not less than five gallons, are wholesale dealers, and persons selling smaller quantities than five gallons are retail dealers; and the tax on liquor dealers applies to all drug stores, except in uses of wine for sacramental purposes and alcohol for domestic purposes. No producer of grape wine, where they raise and make the wine themselves, shall pay any privilege tax for selling the same.

"Provided, they shall not sell in quantities of less than one and a half (1½) gallons.

"Liquor dealers are defined as every person, company, or firm selling spirituous, vinous, or malt liquors, beer or ale, or intoxicating bitters, or any medicated or adulterated cider, or any social club or association, incorporated or otherwise, which handles such liquors for sale. The procuring of United States revenue license to wholesale or retail dealers shall be taken as *prima facie* evidence that the parties are in the wholesale or retail liquor business, and are subject to State and county taxes, unless established by proof that they are not so engaged. Upon any clerk's receiving knowledge of such internal revenue license, he shall have a right to collect the taxes by distress warrants.

"Provided, that nothing in this act shall authorize or legalize the sale of liquors."

Complainant was engaged in business in the city of Nashville, and dealt in and sold beverages conceded to

Austin v. Shelton.

be what are known as soft drinks, also spirituous, vinous, and malt liquors, or beverages containing alcohol, some less than one-half of one per cent, and others more than that, but all less than two per cent, all of which were nonintoxicating. He had a United States revenue license as a retail liquor dealer, required by the internal revenue laws of all persons engaged in the sale of beverages or liquors containing more than one-half of one per cent. of alcohol, which he had obtained because some of the beverages sold by him contained more than that percentage of alcohol. The tax was paid by him under protest, and this suit was brought to recover it.

The question here presented is whether one engaged in the sale of beverages containing a small per cent. of alcohol, in this case less than two per cent., but which are unquestionably nonintoxicating, is a liquor dealer within the meaning of the law, imposing a privilege tax upon liquor dealers, or, in other words, whether a beverage or liquid which contains a small percentage of alcohol, but nonintoxicating, is a liquor in the sense of that law.

The determination of this question depends upon the legislative intent as expressed in the statute we are interpreting, construed in the light of previous revenue laws imposing privilege taxes upon liquor dealers, and the practical construction given them by those whose duty it was to enforce them, and by the courts of the State, and kindred and contemporaneous legislation concerning the sale of liquors, enacted from time to time by the general assembly.

Austin v. Shelton.

The contentions restated are, upon the part of the defendant, that all beverages and liquids which are to any extent spirituous, vinous, or malt, regardless of whether they are intoxicating, are within the statute; on the part of complainant, that such beverages are not within the statute unless the percentage of alcohol contained makes them intoxicating.

We are of opinion that complainant's contention is sound, and our reasons for so holding are these:

For years past, the word "liquor" and the term "liquor dealer" have been used in the revenue laws of this State imposing a privilege tax upon the sale of liquors, and have been understood by the people at large, to mean intoxicating liquors, and dealers in such liquors. They have been used in various statutes and in judicial decisions as meaning the same thing. Shannon's Code, secs. 6785, 6786, 6787, 6795, 6797; Acts 1899, c. 161; *Hatcher* v. *State,* 12 Lea, 367; *Webster* v. *State,* 110 Tenn., 506, 82 S. W., 179; *Harrison* v. *State,* 96 Tenn., 548, 35 S. W., 559; *State* v. *Rauscher,* 1 Lea, 96; *Grills* v. *Mayor,* 8 Baxt., 247; *Webb* v. *State,* 11 Lea, 662; *Pressly* v. *State,* 114 Tenn., 535, 86 S. W., 378, 69 L. R. A., 291, 108 Am. St. Rep., 921; *Foster* v. *Speed,* 120 Tenn., 470, 11 S. W., 925, 22 L. R. A. (N. S.), 949.

The statutes above referred to, prohibiting the sale of liquors to students, minors, habitual drunkards, within four miles of a schoolhouse, and within two miles of a hospital, evidence this fully. Those in relation to students, minors, and sales within two miles of hospi-

tals merely prohibit the sale of vinous, spirituous, or malt liquors; while the others prohibit the sale of intoxicating liquors, yet all these statutes were passed for the same purpose—protection of certain persons from the habit, use, and temptation of intoxicants.

Chapter 161, Acts 1899, makes it a misdemeanor to sell intoxicating liquors without a license, or payment of a privilege tax, although the revenue law does not contain the word "intoxicating."

The privilege tax upon liquor dealers, for more than thirty years, has been imposed for the twofold purpose of revenue and controlling and restricting the sale of liquor, and especially in aiding in the enforcement of what is known as the "four-mile law," which prohibits in terms the sale of intoxicating liquors. *Foster* v. *Speed*, 120 Tenn., 470, 111 S. W., 925, 22 L. R. A. (N. S.), 949.

The first four-mile law was enacted in 1877, and applied to a small part of the territory of the State, but by amendments it was extended from time to time, and, when the general assembly of 1909 met, had been made to apply to all the State, except four cities.

As these amendments were made, and the sale of liquors restricted, the privilege tax was increased in futherance of the enforcement of the law prohibiting the sale of "intoxicating liquors."

The general assembly of 1909 passed January 13, 1909 (Acts 1909, c. 1), a new four-mile law, prohibit-

ing the sale of intoxicating liquors, including wine, ale, and beer, as a beverage, within four miles of a school-house, public or private, where school is kept, in the State, and operated as a prohibition of the sale of in-toxicating liquors in every part of Tennessee.

Afterwards, February 5, 1909, a statute was enacted (Acts 1909, c. 14) providing "that all money paid for licenses for a term after July 1, 1909," by liquor deal-ers, is directed to be returned to them, less that for the time they have done business thereunder before the passage of the law "prohibiting the sale of intoxicating liquors within the State." The licenses here referred to were those issued under the revenue law of 1907 · to "liquor dealers." The revenue statute we are now con-sidering was enacted by the same general assembly May 1, 1909, and the provisions in regard to "liquor ·deal-ers" must be construed in connection with the other legislation upon the same subject.

We will now proceed to examine the provision of the statute under which the tax sued for was collected.

The subject of the tax imposed is "Liquor Dealers." The tax is upon the sale of "liquors," and to be paid by "liquor dealers." The statute declares "that every person, company or firm, selling spirituous, vinous or malt liquors, beer or ale, or intoxicating bitters, or any medicated or adulterated cider, or any social club or association, incorporated or otherwise, which handles such liquors for sale, is a liquor dealer." The terms "spirituous, vinous or malt liquors" (the latter includ-

ing beer or ale), interpreted in the light of the previous legislation upon this subject and its accepted meaning and construction, clearly mean and refer to intoxicating liquors. This is evident from the use of the word "intoxicating" in referring to bitters, and the words "medicated or adulterated" in referring to cider. It is well known that beverages which are intoxicating are sold under the name of "bitters" and "cider," for the purpose of evading the law, and the use of the words named in this connection is intended to prevent such evasion. No such words are used in referring to "spirituous, vinous or malt liquors;" the general assembly assuming that they implied that the beverages so described were intoxicating, because the words had been for years used in that sense.

This subsection closes with this:

"Provided, that nothing in this act shall authorize or legalize the sale of liquors."

This proviso is not to be found in the revenue statutes of 1903 and 1907 (none was enacted in 1905), because, when they were passed, intoxicating liquors could be legally sold in the large cities of the State, and therefore this proviso, or saving clause, was not necessary or proper. When the present law was enacted, January 13, 1909, there could be no legal sales in any part of the State. Therefore the privilege tax imposed, and here involved, was laid upon those selling intoxicating liquors solely for the purpose of aiding the enforcement of that statute, which, as stated, extended only to the prohibition of intoxicating liquors, which is clearer from

the fact that the tax heretofore was graduated according to the size of the city where the sale was lawfully made; the present act imposing the same amount on sales made at any place within the State.

Chapter 385, Acts 1909, passed April 29th, also throws light upon the subject. By it the district attorneys of the State are required to procure from the internal revenue collector for the district of Tennessee certified copies of the records of that office, showing the name of each person, firm, or corporation to whom internal revenue licenses for the manufacture or sale of "spirituous, vinous or malt liquors has been issued," to be used in the prosecution of persons for violation of the laws of the State prohibiting the "manufacture or sale of intoxicating liquors, spirituous, vinous, or malt, within the State." And this, whether the law violated was the "four-mile law," or chapter 161, Acts 1899, making it a misdemeanor to sell intoxicating liquors without payment of the privilege tax imposed upon liquor dealers. The requirement is that a list of all persons who have been licensed to deal in "spirituous, vinous or malt liquors" be procured; but its use is only in prosecutions for violation of laws prohibiting the sale of intoxicating liquors.

While, as an abstract proposition, any beverage which has to any extent, however small the percentage may be, spirituous, vinous, or malt, comes within the letter of the statute, it does not come within its intent and spirit, and to extend it would be judicial legislation.

Austin v. Shelton.

The general assembly could impose a tax upon the sale of beverages containing any percentage of alcohol, and doubtless such an act would contribute much to the enforcement of the law prohibiting the sale of intoxicating liquors, by preventing evasions under the color of sales of nonintoxicants; but it has not done so, and until such a law is enacted no tax can be collected.

It is true that the procuring of a United States revenue license is made *prima facie* evidence that the complainant was engaged in the retail liquor business; but such license is only *prima facie* evidence of the fact, and the tax being imposed only upon dealers in intoxicating liquors, and it being conceded that the beverages sold were nonintoxicating, the *prima facie* case is fully met and overcome.

We conclude that the statutes of this State restricting, prohibiting, and taxing the sale of liquors concern only intoxicating liquors.

We do not hold that the sale of any particular class or kind of beverage, or one containing any stated per cent. of alcohol, can be sold without payment of the privilege tax in question. What we do hold is that the beverage sold, to make the dealer liable for the tax, must be one that is intoxicating. Whether it is or is not intoxicating is a question of fact, to be determined upon the proof in each and every case in which it arises, just as if the sale was one of bitters, which does not make the dealer liable unless the bitters are intoxicating.

Austin v. Shelton.

We have been referred to decisions of courts of other States, construing revenue statutes of those States, which hold as contended by the defendant; but we cannot follow them. This case depends exclusively upon the construction of a statute of Tennessee, and we must interpret it according to its spirit and intent and the legislative will therein expressed.

The decree of the chancellor in favor of complainant must be affirmed.