**LOUISVILLE, H. & ST. L. RY. CO. v. UNITED STATES.**

No. 1874.

District Court, W. D. Kentucky.

Sept. 9, 1937.

Sidney Smith and Woodward, Dawson & Hobson, all of Louisville, Ky., for plaintiff.

James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and Arthur D. Curran, Sp. Assts. to Atty. Gen., and Bunk Gardner, U. S. Atty., and Eli H. Brown, III, Asst. U. S. Atty., both of Louisville, Ky.

HAMILTON, District Judge.

This is an action by the Louisville, Henderson & St. Louis Railway Company, a steam railroad corporation, incorporated under the laws of the commonwealth of Kentucky, against the defendant, the United States of America, seeking to recover $32,910, together with interest thereon, which the plaintiff claims it overpaid the United States as income taxes for the calendar year 1931. The facts out of which the controversy arises are substantially as follows:

The Louisville & Nashville Railroad Company, incorporated under the laws of the commonwealth of Kentucky, before 1905, acquired a controlling interest in the capital stock of the plaintiff, and before the tax year 1931 it owned substantially all of its common and approximately 85 per cent. of its preferred stock. On May 6, 1929, the Louisville & Nashville Railroad Company acquired control of the property of the plaintiff.

By the terms of the transfer, plaintiff demised its railroad and other properties, including its securities, investments, and current assets, to the Louisville & Nashville Railroad Company for a term of 99 years from June 1, 1928, renewable at the lessee's option for equal terms to the end of the lessor's corporate existence in the year 2396. The lessee agreed to pay the lessor's current liabilities and all claims against it, using for that purpose the lessor's current assets and the proceeds of claims due it. Any excess of current assets over current liabilities could be expended, from time to time, for extensions, additions, and betterments to the leased property. For all other expenditures for these purposes, made in the first instance at the cost of the lessee, the lessor agreed to reimburse the lessee by issuing its securities of such kind and up-

on such terms as the lessee determined, and the lessee was to take these securities at their fair market value, subject to the Interstate Commerce Commission's approval. The lessee agreed to assume and perform, during the term of the lease, the lessor's obligations under leases, mortgages, and other contracts relating to the leased property; to pay (a) the semiannual interest installments on $2,500,000 first mortgage 5 per cent. gold bonds due July 1, 1946, and $700,000 of first consolidated mortgage 50-year 5 per cent. gold bonds due October 1, 1965, except upon bonds registered in the name of the lessee or its nominee; (b) a reasonable annual amount for maintaining the corporate existence of the lessor; (c) all taxes, assessments, and governmental charges levied upon the leased property, the income thereof, or upon the lessor, its interests in, or income under the lease; and (d) $8 a share annually on the common stock and $5 a share on the 5 per cent. preferred stock, which was noncumulative, excluding the stock owned by the lessee.

The capital structure of the plaintiff during the calendar year 1931 consisted of 20,000 shares of common stock, par value $100, and 20,000 shares of preferred stock, par value $100. Of the above, the Louisville & Nashville Railroad Company, during the year 1931, owned 19,949 shares of common and 17,051 shares of preferred. On the date the lease was executed, it owned 19,090 shares of common and 17,050 preferred. It subsequently acquired 859 shares of common stock and one of preferred.

The plaintiff timely filed its income tax return for the calendar year 1931, and included at the appropriate place thereon $142,988.64 income from lease of road, and, under the heading "additions to income from lease of road," it included $244,866.05 dividends on stock owned by lessee, and $33,335.02 income taxes paid by it. The amount of the tax was calculated by including in income all of the above items. The plaintiff, after paying the tax, filed claim for refund on the ground it had erroneously included rents received measured by its capital stock owned by the Louisville & Nashville Railroad Company, lessee, and also had erroneously included, as rent, income taxes paid by said lessee on the above income. These changes would entitle

the plaintiff to a refund of $32,910 taxes overpaid, with legal interest, and it bases its claim here on the same ground set up in its refund claim.

The Commissioner of Internal Revenue neither allowed nor rejected plaintiff's refund claim.

The books and records of accounts of the plaintiff and of the Louisville & Nashville Railroad Company were kept in the same place and by the same persons. The latter company, on its income tax return, deducted all items of income reported by the plaintiff as rent paid, but there were no entries made in the books of either company reflecting the receipt or disbursement of the $244,866.05 in controversy here.

The plaintiff also reported, under "additions to income," $35,000 interest paid on bonds by lessee, and, under "deductions interest paid," the same sum. This item of income falls in the same class as rentals measured by stock owned by lessee, but plaintiff makes no contention as to it because of the offsetting deduction. The Louisville & Nashville Railroad Company had a substantial part of the stock of the plaintiff owned by it, pledged as collateral to secure some of its bonds.

From February 15, 1924, to May 26, 1929, the plaintiff paid the following dividends: February 15, 1924, 4 per cent. on preferred stock; February 16, 1925, 4 per cent.; September 15, 1925, 2½ per cent. on preferred, 2 per cent. on common; February 15, 1926, 2½ per cent. on preferred, 2 per cent. on common; September 15, 1926, 2½ per cent. on each class of stock; February 15, 1927, 2½ per cent. on each class; August 15, 1927, 2½ per cent. on each class; February 15, 1928, 2½ per cent. on each; August 15, 1928, 2½ per cent. on the preferred; February 15, 1929, 2½ per cent. on each.

The plaintiff contends that, under the terms of its lease with the Louisville & Nashville Railroad Company, it received no rental income, either actually or constructively, measured by its stock owned by the lessee.

Defendant contends that, where a corporation leases its property for a term of years under a proviso that rent should be paid direct to its stockholders in proportion to their holdings, rent is presumably received by the lessor on the stock, notwithstanding a provision in the

486

lease that it is to be measured by excluding the shares owned by the lessee.

The defendant further contends there was no abatement of the rent by excluding participation of stock of the lessor owned by the lessee, but a waiver by lessee stockholder of its right to receive dividends on account of rent while the stock was registered in its name.

The Revenue Act of 1928, c. 852, 45 Stat. 791, 797, § 22, U.S.C.A., title 26, c. 24, § 2022 (26 U.S.C.A. § 22 and note), defines "gross income" to include: "Gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

Under regulations of the Treasury Department, Revenue Act of 1917 (Treasury Regulations 33, Article 102), Revenue Act of 1918 (Treasury Regulations 45, page 12), Revenue Act of 1921 (Treasury Regulations 62, Article 547), Revenue Act of 1928 (Treasury Regulations 74, Article 70), rent paid by a lessee directly to the stockholders of the lessor constitutes taxable income to the latter.

The Congress has given the above regulations legislative sanction by re-enacting revenue statutes without in any way modifying the definition of income as defined in them, and the courts have consistently upheld the Treasury definition as set out in the regulations. The plaintiff does not deny the fact that income accrues to a lessor from rents paid directly to its stockholders, by its lessee, but insists that it received no rent measured by its stock owned by its lessee, and it relies on the following provision of the lease to sustain its position: "Provided, however, that no such payment shall be made with respect to capital stock (either preferred or common) from time to time registered in the name of the lessee or of a corporate successor of the lessee, or of a nominee (which word in this lease includes a trustee, under a mortgage of the lessee) of the lessee or of any such corporate successor; the lessee hereby waiving all right to participate as a stockholder of the lessor in any dividend or distribution during the term of this lease from or on account of rentals payable hereunder. In case at any time any share or shares of stock which may have been registered in the name of the lessee, or its nominee, or any corporate successor or its nominee, shall cease to be so registered, then in every such case the lessee will forthwith pay dividends on such stock ceasing to be so registered at the rates above stated on each such share."

In interpreting revenue statutes and determining whether specific transactions fall within them, it is well for judges to bear in mind the statement of Cooley on Taxation, § 272: "There must surely be a just and safe medium between a view of the revenue laws which treats them as harsh enactments to be circumvented and defeated if possible, and a view under which they acquire an expansive quality in the hands of the court, and may be made to reach out and bring within their grasp, and under the discipline of their severe provisions, subjects and cases which it is only conjectured may have been within their intent. Revenue laws are not to be construed from the standpoint of the taxpayer alone, nor of the government alone. Construction is not to assume either that the taxpayer, who raises the question of his legal liability under the laws, is necessarily seeking to avoid a duty to the state which protects him, nor, on the other hand, that the government, in demanding its dues, is a tyrant which, while too powerful to be resisted, may justifiably be obstructed and defeated by any subtle device or ingenious sophism whatsoever. There is no legal presumption either that the citizen will, if possible, evade his duties, or, on the other hand, that the government will exact unjustly or beyond its needs. All construction, therefore, which assumes either the one or the other, is likely to be mischievous and to take one-sided views, not only of the laws, but of personal and official conduct."

The application of the income tax law concerns purely business transactions, and the government is without right to distort the things men do in order to collect taxes, and individuals are without right to conceal or disguise their business transactions in order to prevent the imposition of taxes. The government must

measure its exactions by the acts in fact done, and the taxpayer discharge his obligation to his government by basing the tax on profit he has in fact realized. Consideration of the substance, rather than the form out of which the alleged taxable transaction arises, is the basic rule to be applied.

Taxes accrue to a corporation when payments are made out of income to its stockholders on its behalf, because of the separate entities. Stockholders are not the owners of the corporate assets, and the corporation is not the owner of the outstanding stock. Where the corporate form is retained, it is an entity separate and distinct from its stockholders. The stockholders lack authority to conduct the business affairs of the corporation, this being the prerogative of the board of directors.

The case here turns on the interpretation of the lease. The corporation had the right to lease its property on such terms as its managing officers deemed proper, and it had the right to set up any business standard for the measurement of rent.

It had no right to exclude some stockholders of the same class from receiving income or dividends from the corporation. So far as it was concerned, all stockholders of the same class were on an equal footing. The stockholders had the right to donate or assign to the corporation any property or money accruing to them out of either the earnings or assets of the corporation.

The provision of the lease as to payments of rent measured by stockholdings may be construed in one of two ways. First, it is susceptible to the construction that the Louisville & Nashville Railroad Company, being the owner of a majority of the stock, wished to donate to the corporation its share of the rent to lessen the burden which would otherwise fall on its own revenues. This interpretation of the lease seems to have been the view of the president of the lessor when the matter was submitted to the Interstate Commerce Commission, 150 I.C.C. 741. In the Commission's findings it is said: "The president of the applicant testified that in view of the small number of shares to which the $8 rental would apply, the applicant would be willing to pay more if we should

hold that this should be done; that it was a question of principle rather than of the cost to the applicant."

The other view is that the lessee wished to avoid the expense and inconvenience of going through the form of making payments to itself.

This is a contract between common carriers subject to public regulation, and it may be assumed that it was intended by the public authorities who were required to approve the lease that no undue burden was to be placed on the operating company and its revenues. From the standpoint of revenue to the government arising out of income taxes, the question is of no great importance. Whatever is chargeable as income to the plaintiff is deductible from gross income by the Louisville & Nashville Railroad Company, and, so long as the latter company is a profitable enterprise, the government loses nothing in taxes.

For the year here in question, the Louisville & Nashville Railroad Company had a large operating loss and owed no taxes. In the administration of the income tax law, separate taxable entities must be kept clearly in mind and no confusion arise because of intertwined business relationship.

I am of the opinion that the lessee intended to forego any right it had as a stockholder of the lessor to receive part of the rent measured by its stock. As I have heretofore stated, the plaintiff had the legal right to lease its property on such terms as its officers deemed best, and the lessee, as a stockholder of the lessor, had the right to forego any rental income accruing to it by reason of it being a stockholder of the lessor. The two acting together could so measure the rent based on stock ownership as to confine it to the shares of stock owned by others.

In the lease it is expressly stated: "The lessee hereby waiving all right to participate as a stockholder of the lessor in any dividend or distribution during the term of this lease, from or on account of rentals payable hereunder."

We have here three parties to a transaction, lessor, lessee, and stockholder. The lessor is entitled to receive from the lessee rent measured by its outstanding shares of stock, but by the consent of the stockholder and the lessor the lessee is relieved of the obligation to pay rent.

488

Does such waiver constitute taxable income to the lessor?

A corporation may enter into an agreement with its stockholders to do or refrain from doing any act which is not contrary to the express law or public policy, and such contract may provide for a surrender by one of the parties of some privilege otherwise granted by law. It has been held that a corporation may agree to require, as a part of all of its contracts, a stipulation by its creditors that they will waive their right to enforce the personal liability of the stockholders given by the Constitution itself. Wells v. Black, 117 Cal. 157, 161, 48 P. 1090, 37 L. R.A. 619, 59 Am.St.Rep. 162.

The stockholders of a corporation may contract or deal with each other, or the corporation, when acting in good faith, and such agreements are to be construed and performed according to their terms. Accordingly, the lessee here was not required to pay any rent measured by the shares of stock of the lessor which it owned, and for tax purposes this contract should be construed as other ordinary business transactions.

Plaintiff did not constructively receive rents from the Louisville & Nashville Railroad Company, which immediately passed to it in the form of dividends. This is clear when the contract is analyzed, because in no event was the plaintiff entitled to receive rents thus measured, nor was the lessee required to pay them. Synthetic income is not covered by the internal revenue statutes, and probably not within the purview of the Sixteenth Amendment, and that is the income here taxed.

Exact precedents in income tax cases are few, and usually different facts make cited cases inapplicable to the one under consideration. The case of Gold & Stock Telegraph Company v. Commissioner of Internal Revenue (C.C.A.) 83 F.(2d) 465, 468, is the only case that seemingly applies here. There the taxpayer leased all of its property to the Western Union Telegraph Company at an annual rental of $300,000, payable quarterly, which was equal to a 6 per cent. annual dividend on its stock. The lessee was required to pay the rental direct to the stockholders of the taxpayer. The Western Union owned a large block of the lessor's stock. The taxpayer sought to avoid including any part of the rentals in its return, and insisted it was entitled to exclude the amount arising from the stock ownership of the lessor, in any event. The court, in denying its contention, said: "It is argued that the rentals payable upon the large stockholdings of the Western Union itself should not be taxed as income of the lessor because the rentals to that extent were not paid out, but we can see no merit in the contention. The Western Union, like every other stockholder of the lessor, chose to acquire an interest in the corporate association. Rent accrued to it as a stockholder of the corporation and, whether it chose to pay it to itself or not, its rights were as truly worked out through the corporation as those of the other stockholders. The property of the corporation of which it was a beneficiary yielded a return, and that corporation cannot avoid taxes because the guaranty could not be enforced by the Western Union against itself."

In the cited case, the lessee was required to pay a lump sum in rent. It was not measured by the number of shares of stock of the lessor outstanding, excluding that owned by the lessee, nor did the contract fixing rent exclude in measurement the stock of the lessor owned by the lessee. The cited case emphasizes the rule just stated, and distinguishing facts must be sought with care in establishing precedents in tax cases.

Judgment will be for the plaintiff. Counsel will prepare findings of fact and conclusions of law in conformity with this opinion.