NASHVILLE & DECATUR RAILROAD COMPANY, Complainant-Appellant,

v.

Z. D. ATKINS, Commissioner of Finance and Taxation, State of Tennessee, Defendant-Appellee.

Supreme Court of Tennessee.

Jan. 22, 1973.

**838**

David M. Keeble, Hooker, Keeble, Dodson & Harris, Nashville, for complainant-appellant.

David M. Pack, Atty. Gen., State of Tennessee, Milton P. Rice, Deputy Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

SHRIVER, Special Justice.

This is a declaratory judgment suit filed by complainant, Nashville & Decatur Railroad Company, to determine whether the Railroad Company is liable for excise and franchise taxes under Tennessee statutes, Section 67–2711 et seq., and 67–2917 et seq., T.C.A. After a hearing on the pleadings, stipulation of facts and exhibits, and argument of counsel, the Chancellor held the complainant liable for the taxes in question, and from this decree it perfected its appeal to this Court and has assigned errors.

The original bill, filed March 23, 1956, avers that the Nashville & Decatur Railroad Company was incorporated under the laws of the State of Tennessee; that it owns 133.60 miles of railroad trackage, of which 93.03 miles are located in Tennessee, the remaining mileage being in the State of Alabama; that complainant has outstanding 142,150 shares of capital stock, with a par value of $3,553,750.00, plus fractional shares equal to $13,632.33, making a total par value of $3,567,382.33; and that, as of December 31, 1953, 55,838 full shares were owned by residents of the State of Tennessee.

It is further averred that by a lease dated October 18, 1899, copy of which is made Exhibit 1 to the bill, said Railroad Company leased all of its property to the Louisville and Nashville Railroad Company, a Kentucky corporation, for a period of 999 years. Pursuant to said lease, the Louisville and Nashville Railroad Company pays direct to the stockholders of the Nashville & Decatur Railroad Company 7½% per annum of the par value of their respective

holdings of stock in said corporation. It is alleged that the Nashville & Decatur Railroad Company does not carry on business of any type other than the ownership and leasing of its property, as hereinabove stated.

It is alleged that the Department of Finance and Taxation of Tennessee has issued a distress warrant against complainant, a copy of which is attached and made Exhibit 2 to the bill, seeking to collect franchise tax for 1954 in the amount of $2,852.-82 and an excise tax for the same year in the amount of $5,367.80, and that the Department is threatening to run an execution to collect said taxes unless paid promptly.

Complainant denies that it is liable for either the franchise or excise tax, and pertinent parts of the statutes under which the State seeks to hold complainant liable are copied into the bill.

Complainant contends that its mere ownership of property in the State of Tennessee and the leasing thereof pursuant to the terms of the 999 year lease above referred to, does not constitute doing business in the State and that a corporation is not subject to a franchise tax for the privilege of doing business in the State where it does not actually exercise that privilege.

As to the excise tax originally enacted in 1923, complainant contends that it is not subject to said tax inasmuch as it is not doing business in the State of Tennessee and had no earnings from business in the State for the year 1954, the year for which the levy involved here was made.

It is further averred that the defendant is bound by the long and consistently adhered to policy and construction of these tax statutes on the part of the officials of the Department of Finance and Taxation of Tennessee who held that complainant was not liable for said taxes, and that the reenactment in 1937 of the franchise tax by the Legislature with knowledge of the Commissioner's construction of said tax amounted to an adoption of that construction.

Complainant further asserts that, even if it is liable for the taxes in question, the method of computation of said taxes as used by the State is erroneous and that the statutory formula specifically applicable to common carriers by rail should be applied.

As above indicated, the bill prays for a declaratory judgment decreeing that it is not liable for either the excise or franchise tax under Tennessee statutes and, in the alternative, if it be held liable, that the computation be made on the basis and according to the formula provided for rail carriers and not according to the assessment made by the State.

The answer of the defendant admits the allegations of fact set forth in the original bill, but denies the conclusions of law drawn by complainant.

It thus appears that there is no dispute as to the facts, all of which are either admitted in the answer or stipulated.

In the brief and argument of counsel for complainant-appellant (hereinabove referred to as complainant), attention is called to the fact that there is attached to the stipulation a copy of an opinion from the Office of the Attorney General of Tennesssee, addressed to the Commissioner of Finance and Taxation, under date of June 20, 1939, with respect to liability for Tennessee excise and franchise taxes of the Chicago, Rock Island & Pacific Railway Company; the Choctaw, Oklahoma & Gulf Railway Company; and the Rock Island, Memphis Terminal Railway Company. It is insisted by complainant that almost identical circumstances existed with respect to the Railway Companies referred to in the foregoing opinion as those existing in the case at bar, and that, in said opinion of the Attorney General, said Railway Companies were held not liable for said taxes.

Also attached to the stipulation is a letter dated April 1, 1937, from Edwin F. Hunt, Assistant Attorney General for the State of Tennessee, addressed to the Honorable J. E. Bates, Director of Assessments, Department of Finance and Taxation, in

which he gave the opinion that the Nashville & Decatur Railroad Company was not liable for the Tennessee excise tax.

In the reply brief of the defendant it is stated that appellee recognizes the principle of statutory construction that a long continued administrative interpretation is persuasive with respect to legislative intent. In State ex rel. v. Nashville Baseball Club, 127 Tenn. 292, 154 S.W. 1151, Ann.Cas. 1914B, 1243, it was said that construction of a statute or the Constitution, not emanating from judicial decision, but adopted by the legislative or executive departments of the State, and long accepted by the various agencies of government and the people, will usually be accepted as correct by the courts. Citing Austin v. Shelton, 122 Tenn. 634, 127 S.W. 446, and numerous cases. However, it is the State's contention that under the decision of this Court in Texas Gas Transmission Corp. v. Atkins, 197 Tenn. 123, 270 S.W.2d 384, prior to which decision the Department of Revenue did not assert or attempt to collect franchise and excise taxes against complainant, there can be no serious doubt as to appellant's liability for the excise and franchise taxes.

■ We must agree that an administrative interpretation cannot stand in the face of a subsequent Court decision in which there is a different interpretation than that previously placed upon the statutes by the administrative authorities. See Ownbey v. Butler, 211 Tenn. 366, 365 S.W.2d 33, where it was held that the State was not estopped from collecting excise taxes from Tennessee corporations on sales to out-of-state customers because of prior construction of the tax statute by the Commissioner.

■ We are of opinion that when the language used by this Court in Memphis Dock & Forwarding Co. v. Fort, 170 Tenn. 109, 92 S.W.2d 408, and Texas Gas Transmission Corp v. Atkins, 197 Tenn. 123, 270 S.W.2d 384, is carefully considered, the Chancellor's decree holding complainant liable for the taxes in question must be affirmed.

In the Memphis Dock & Forwarding Co. case, supra, a clear and concise opinion by Mr. Justice Cook points out that in several assignments of error the complainant insists (1) that it was not subject to the excise tax because it had leased all of its corporate property and merely maintained its corporate existence for the purpose of holding title, receiving rents, and distributing the income from rentals, and was, therefore, not engaged in business in Tennessee; and (2) that neither the ownership of property nor the rental of property owned by the corporation is a taxable privilege. In passing upon these two propositions, the Court said:

"It may be conceded, as insisted by complainant, that the ownership and rental of corporate property is not a taxable privilege without affecting the result. The tax is not laid upon a particular corporate business or upon a particular transaction; it is upon the privilege of doing business as a corporation and exercising the corporate powers for the purpose of producing a profit. The source of the profit and the character of business carried on in the corporate name is immaterial. The tax is measured by net earnings that result from whatever business may be done by the corporation in the exercise of powers conferred by the charter. That is made apparent by reference to the act carried into section 1316 of the Code of 1932. Our cases of Bank of Commerce & Trust Co. v. Senter, 149 Tenn. 569, 260 S.W. 144, and Jorgensen-Bennett Mfg. Co. v. Knight, 156 Tenn. 579, 3 S.W.2d 668, 60 A.L.R. 393, are in accord with that conclusion."

The Chancellor's decree was affirmed.

Complainant-appellant places substantial reliance on the decision of this Court in State ex rel. McCanless, etc. v. Cincinnati Southern Railway et al., 178 Tenn. 328, 157 S.W.2d 833, wherein it was held that a corporation organized under the laws of another state which merely carried on the

business of leasing, collecting and disbursing the rents from property in Tennessee was not "doing business" in Tennessee within the meaning of the excise tax law as applied to foreign corporations. As we read the decision in this case, it reiterates the prior holding of the Court that a foreign corporation whose sole activity in Tennessee is the owning and leasing of property is not so engaged in business as to be liable for Tennessee corporation taxes, but we do not find that it overrules the principles announced in the Memphis Dock & Forwarding Co. case, supra, so as to permit a domestic corporation to enjoy immunity from Tennessee franchise and excise taxes when engaged in the same activities as the Cincinnati Southern Railway was engaged in.

In addition to this, we must take into consideration the 1955 amendments to the franchise and excise tax statutes which broadened said statutes to include all corporations, whether domesticated in Tennessee or not, if local activities were engaged in or benefits were received from the doing of business in Tennessee.

Coming now to the case of Texas Gas Transmission Corp. v. Atkins, 197 Tenn. 123, 270 S.W.2d 384, wherein it was sought to recover State excise and franchise taxes paid under protest, and wherein the decree of the Chancellor was reversed in which he had held that the complainant was engaged wholly in interstate commerce and, therefore, under the case of Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573, was not liable for those taxes.

In the opinion written by Mr. Justice Swepston it was said that the complainant Transmission Company had compressor stations, metermen and dispatchers, maintenance camps, materials and supplies, rights-of-way, easements and permits to cross highways, etc., in Tennessee, and all other facilities necessary for the operation of a gas pipeline, and that, although it transported gas from Texas and Louisiana through Mississippi, Tennessee and Kentucky into Ohio and had customers in Tennessee that took gas at several points directly from its interstate line, it had no financial interest in the sale of gas after the gas left its main line. The Court concluded that these transactions did not constitute the doing of intrastate business. The Court said:

"The Chancellor held, and we think correctly, that this purchase being in furtherance of complainant's interstate transmission of gas was interstate commerce. Ozark Pipe Line v. Monier, 266 U.S. 555, 45 S.Ct. 184, 69 L.Ed. 439.

Hence, we hold that complainant was not engaged in intrastate commerce in Tennessee."

In the opinion the case of Spector Motor Service, Inc. v. O'Connor, supra, was referred to with the statement that if that case was controlling, the Tennessee taxes were not valid, whereas, if it was not controlling, the taxes were valid. The Court reached the conclusion that the crux of the Spector case was that the Supreme Court accepted as its basic predicate the construction placed on the statute involved by the highest Court of Connecticut, which held that the tax was levied upon *the right to do interstate business,* and that *the right to do business in corporate form* was not involved in the case. The opinion proceeds:

"The Tennessee franchise tax, however, is imposed upon 'the privilege of engaging in business *in corporate form* in this State.' The excise tax, although not expressly so providing, has likewise been (so) construed."

The opinion continues:

"In Bank of Commerce & Trust Co. v. Senter, 149 Tenn. 569, at page 583, 260 S.W. 144, at page 148, involving the excise tax, the Court said:

'In Flint v. Stone Tracy Co., 220 U.S. (107) 151, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312, the Court said the tax may be described as an

excise upon the particular privilege of doing business in the corporate capacity; i. e., with the advantages that arise from the corporate or quasi corporate organization. We think this properly characterizes the tax levied by the act in controversy.' "

In said case (Texas Gas Transmission Corp. v. Atkins), the Court refers to and quotes from Jorgensen-Bennett Mfg. Co. v. Knight, 156 Tenn. 579, 583, 3 S.W.2d 668, wherein Bank of Commerce & Trust v. Senter, 149 Tenn. 569, 260 S.W. 144, was quoted from to the effect that the local business of a corporation, either foreign or domestic, may support an excise measured by any reasonable method, if interstate commerce, is not taxed, and that the Legislature imposed this tax, not upon interstate commerce nor upon business beyond the State, but upon the privilege of exercising the corporate privilege in this State, and adopted as the measure, net earnings from business done in the *corporate capacity* by exercising its power in Tennessee.

Memphis Dock & Forwarding Co. v. Fort, supra, was referred to and quoted from in the Texas Gas Transmission Corp. opinion wherein it was said that the source of the profit and the character of business carried on in the corporate name is immaterial. The tax is measured by net earnings that result from whatever business may be done by the corporation in the exercise of powers conferred by the charter, and it was reiterated that the Court in previous decisions had expressly determined that the right to do business in Tennessee in corporate form is a taxable privilege. The opinion proceeds as follows:

"It would seem, therefore, that the incidence or impact of these taxes has long ago been placed by the Courts of this State upon the privilege of doing business in *corporate form*, and not merely on the *doing of business.*

Finally, the Court says:

"These taxes are non-discriminatory in that they apply to all corporations alike which have been granted a franchise or privilege to do business in this State in corporate form . . . ."

Thus, we think the first two assignments must be overruled.

■ There remains for consideration the question raised by complainant that the formula by which the State seeks to fix the amount of the tax is incorrect and discriminatory. It is stated by counsel in his brief and argument:

"Indeed, as this case now stands before the Court, the issue is the appellant's liability for both of said taxes based on the formula set forth as an attachment to the distress warrant. (Exhibit 3)

In this computation the State used the following formula:

| Ratio of | Track mileage in Tennessee | plus | Receipts to Tennessee stockholders |
|---|---|---|---|
| To | Track mileage everywhere | | Receipts to all stockholders" |

It is pointed out that the State found that 70% of the mileage of the Nashville & Decatur Railroad Company was in Tennessee, and that receipts to Tennessee stockholders represented 37% of the dividends paid. The arithmetic average of these two ratios gave the result as 53.5%.

However, the State does not now insist upon the arithmetic average of these two factors but seeks to apply the mileage factor of 70% alone, and complainant urges that this results in an unjustified increase in the tax.

It will be seen that the franchise tax provides that the rate is 15 cents per $100.00 on issued and outstanding stock, plus undivided profits properly allocable to Tennessee, and an apportionment is made as prescribed in 67–2913, 67–2917, T.C.A.

The statute provides a method of computing the tax on merchants doing business within and without the State and on common carriers by rail, and then a still dif-

ferent formula for "other businesses". And, finally, in 67–2917 it is provided that if the above formulas do not fairly represent the extent of the taxpayer's interest in Tennessee, the Commissioner of Revenue, with the approval of the Attorney General, may provide a special and more equitable formula.

The excise tax is a 6% levy on corporate net earnings and the tax on manufacturers or processors engaged in business within and without the State is computed in the same manner as the franchise tax.

It is plausibly argued by counsel for the complainant that there is no dispute but that all of the properties of the Nashville & Decatur Railroad Company are utilized in the business of a common carrier by rail and that an owner of railroad property is legally required to maintain rail operations or provide for the continued operation thereof. The contract between the L & N Railroad and complainant is more than a mere lease of property since it provides in Article IX that the L & N will operate said railroad to the end of the term of the lease, and in Article X, it is agreed that the L & N will keep the property "up to the requirements of the laws, both State and Federal."

It is further plausibly argued that the lease of complainant's property to the L & N, whereby the lessee agrees to pay the stockholders of complainant Company a specified dividend directly to them, does not change the character and nature of the taxpayer's properties and business. It is still a railroad operating as a common carrier for which purpose it was exclusively chartered.

It seems reasonable to us that the fact that this Railroad carries out the purposes of its charter as a rail carrier through the instrumentality of the L & N Railroad Company, pursuant to a contract, should not, thereby, subject it to a higher tax than would be true if it operated the properties itself.

We are, therefore, inclined to the view that "a more equitable formula" would be arrived at by applying to complainant the one set out in the statute, 67–2915(a) which is applicable to common carriers by rail, and the formula for the excise tax applicable to common carriers by rail doing business within and without the State of Tennessee, 67–2709(a), T.C.A.

For the reasons hereinabove set forth, Assignments of Error Nos. 1 and 2, which address themselves to the alleged error of the Chancellor in holding that the complainant is liable for the excise and franchise taxes, are overruled, while Assignment No. 3, which challenges the formula used in arriving at the tax, is sustained for the reasons and in the manner hereinabove set forth.

Affirmed in part, reversed in part, and remanded for such other and further proceedings as may be necessary in the premises.

DYER, C. J., CHATTIN, J., and WILSON and PURYEAR, Special Justices, concur.

## ON PETITION TO REHEAR

The appellee, Z. D. Atkins, Commissioner, etc., has filed a Petition to Rehear in the above styled cause, asserting that petitioner is aggrieved by so much of the Court's opinion as holds that appellant, Nashville & Decatur Railroad Company, is entitled to apportion its tax values as between Tennessee and other states under the statutory formula prescribed for common carriers by rail. It is further asserted that petitioner would demonstrate that the Court's resolution of the apportionment formula is one which it will be very difficult, if not impossible, to implement.

Bearing in mind that the formula in question would be applied so as to allocate the taxable values of the Railroad as between Tennessee and Alabama, inasmuch as the Railroad is located in only those two States,

the sections of the Code applicable here are T.C.A. 67–2709(a) and T.C.A. 67–2915 (a), which, when applied as required by the opinion of this Court heretofore filed, is as follows:

"The ratio obtained by taking the arithmetical average of the following two (2) ratios:

1. The gross receipts from railway operations on business beginning and ending within this state without entering or passing through any other state as compared with its entire gross receipts from such operations within and without the state.

2. The mileage owned and operated within Tennessee plus mileage leased and operated within Tennessee as compared with the total of such mileage within and without the state."

It is asserted by petitioner that the second ratio hereinabove presents no problem, since the total mileage in Tennessee and Alabama remains constant.

On the other hand, it is argued that there is no showing in the record that the Nashville & Decatur Railroad maintains any books or records which would reflect the gross receipts realized by the lessee, Louisville and Nashville Railroad Company, in Tennessee and in Alabama, and it is further argued that the Nashville & Decatur Railroad Company might not be able to obtain the necessary data from the Louisville and Nashville Railroad Company to enable it to file its tax returns and that, if in the future the Louisville and Nashville Railroad should for any reason refuse to make its records available, any effort on the part of the Nashville & Decatur Railroad Company to comply with the requirements of the tax return would be paralyzed.

This position completely overlooks the fact that under the 999 year lease agreement between the two Railroads which is exhibited in the record, the terms of which were made known to the Trial Court and to this Court, the Louisville and Nashville Railroad Company assumed the obligation of paying any and all taxes imposed on the Nashville & Decatur Railroad Company. Therefore, as is urged by counsel for the appellant in his response to the Petition to Rehear, it is inconceivable that the Louisville and Nashville Railroad Company would undertake to withhold from the Nashville & Decatur Railroad Company, or from the tax authorities, the information as to its gross receipts from railway operations of the lessor Railroad, especially, since the furnishing of those records would have the effect of reducing the amount of taxes that the Louisville and Nashville Railroad Company would have to pay the State.

It appears to the Court that it is a rather empty argument that these facts and figures might be denied to the taxing authorities by the Louisville and Nashville Railroad Company when, in point of fact, not only under the 999 year lease is the Louisville and Nashville Railroad Company bound to pay said tax and is, therefore, obligated to see that a proper return is made, but moreover, the very figures in question are required of the Louisville and Nashville Railroad Company in connection with its tax returns to the State.

We agree with counsel for the petitioner that the Court's rationale as expressed in the Opinion heretofore filed, to the effect that the Nashville & Decatur Railroad Company should not incur a larger tax liability because of its decision to have its property operated through a lessee, appeals to one's sense of equity. And, it is interesting that petitioner states: "Indeed it has never been without such appeal to the Department of Revenue and its legal advisors. Only the matters pointed out herein have prevented the administrative adoption of the formula decreed by the Court."

Being fully convinced that the fear of the petitioner that enforcement of the tax might be impaired by adoption of the formula decreed by the Court is not well

founded, we think the Petition to Rehear should be denied.

We again call attention to the fact that in Section 67–2917, T.C.A., it is provided that, if the formulas set out in the tax statute should, for any reason, fail to fairly represent the extent of the taxpayer's interest in Tennessee, the Commissioner of Revenue, with the approval of the Attorney General, may provide a special and more equitable formula.

We are persuaded to believe that the formula announced by the Court in its original opinion represents a more equitable formula than the one that was proposed by the State.

The Petition to Rehear is respectfully denied.

DYER, C. J., CHATTIN, J., and WILSON and PURYEAR, Special Justices, concur.