**NASHVILLE & DECATUR RAILROAD COMPANY, Plaintiff–Appellee,**

v.

**Jayne Ann WOODS, Commissioner of Revenue, State of Tennessee, Defendant–Appellant.**

Supreme Court of Tennessee.

Sept. 2, 1980.

Harlan Dodson, Dodson, Harris, Robinson & Aden, Nashville, for plaintiff–appellee.

William M. Leech, Jr., Atty. Gen., Everett H. Falk, Deputy Atty. Gen., Nashville, for defendant–appellant.

## OPINION

FONES, Justice.

This case involves a construction of the apportionment statutes by which the franchise and excise tax applicable to common carriers was computed for the years 1960–1972.

This litigation is a sequel to *Nashville & Decatur R. R. Co. v. Atkins*, 489 S.W.2d 837 (Tenn.1973), a declaratory judgment action wherein the railroad sought an adjudication that it was not liable for franchise and excise taxes. Briefly, the gravamen of that action was that the N & D Railroad had leased to the L & N Railroad for a period of nine hundred and ninety–nine years all of its properties, consisting of 133.6 miles of railroad trackage in Tennessee and Alabama and its rights, privileges, and franchises; that it was not engaged in any business, other than the ownership and leasing of its property, which it asserted was not subject to the franchise and excise tax. The Court rejected N & D's arguments and expressly held that its franchise and excise tax liability should be computed by the formulas applicable to common carriers. The applicable formulas were contained in T.C.A. § 67–2709(a) and T.C.A. § 67–2915(a).[1] The two formulas were identical and read as follows:

"The ratio obtained by taking the arithmetical average of the following two (2) ratios:

1. The gross receipts from railway operations on business beginning and end-

ing within this state without entering or passing through any other state as compared with its entire gross receipts from such operations within and without the state.

2. The mileage owned and operated within Tennessee plus mileage leased and operated within Tennessee as compared with the total of such mileage within and without the state."

The *Atkins* opinion reveals that the commissioner had first computed N & D's franchise and excise tax by taking the arithmetic average of the following two ratios: 1) the receipts to Tennessee stockholders from the lease proceeds to the receipts to all. stockholders, and 2) the track mileage in Tennessee to the track mileage everywhere. The average of those two ratios resulted in the figure of 53.5 percent. At some point in that prior litigation, however, the commissioner changed positions and sought to tax N & D solely on the ratio of Tennessee trackage to all trackage, which produced a measure of the tax at 70 percent. As stated, the Court rejected the commissioner's proposed formula and adjudged the common carrier formula applicable to N & D.

Following the decision in *Atkins*, N & D computed its tax liability according to its interpretation of the common carrier formula and paid the tax. The commissioner made an audit applying a different interpretation of that formula and assessed additional taxes, which were paid under protest. The present action was brought to recover the deficiency asserted and collected by the commissioner.

### I.

The tracks of the N & D run southward from Nashville through Columbia and Pulaski to Athens, Alabama. From Athens, Alabama its tracks continue south terminating in Decatur, Alabama, and also northeastward, terminating in Armore, Alabama. The N & D has 93.3 miles of railroad in Tennessee and 40.57 miles of railroad in Alabama.

---

1. These statutes were repealed by 1976 Tenn. Pub.Acts, ch. 537.

The first issue involves the interpretation and application of the language prescribing the numerator of the first ratio, to wit, "the gross receipts from railway operations of business beginning and ending within this state without entering or passing through any other state. . . ."

The N & D contends that this numerator requires inclusion of only those gross receipts on business wherein the bill of lading shows that the entire shipment began and ended within Tennessee without entering or passing through any other state.

The commissioner insists that the numerator of the ratio so delineated requires the inclusion of the gross receipts charged for that portion of the shipment over the N & D tracks, regardless of the state in which the shipment originated and regardless of the state in which the shipment was ultimately received, so long as the shipment was received on the N & D tracks within Tennessee and left the N & D tracks within Tennessee without entering or passing through any other state while on its tracks.

■ The learned chancellor held that it was not necessary to determine the issue on the basis of interstate or intrastate traffic because the language of the statutory apportionment formula clearly included only traffic that began and ended within this State and excluded traffic that entered or passed through any other state. We agree.

The commissioner correctly insists that the act of carrying on business in interstate commerce does not exempt a corporation from state taxation if the taxes are reasonably related to the corporation's local activities. As held by the chancellor, however, the statutory language simply does not embrace interstate shipments. The commissioner argues that the "business" to which the statute refers, as applied to the facts of this case, is the business of leasing trackage and, therefore, when a shipment rolls over N & D's tracks in Tennessee regardless of origin or termination, the gross receipts attributable to its mileage on N & D's tracks in Tennessee are taxable. If the statutory formula had omitted the words "on business" so that it read "the gross receipts

from railroad operations beginning and ending within this State," perhaps that interpretation would be correct. But the natural and ordinary meaning of the phrase "on business beginning and ending in this State," as applied to common carriers, can only mean consignments of cargo originating and terminating in Tennessee.

## II.

L & N owned stock in N & D at the time the lease agreement was entered into and the consideration flowing from lessee L & N to lessor N & D was stated in the lease as

"[a] sum of money equal to seven and one-half percent per annum upon the capital stock of the lessor, as it may stand from time to time, . . . the proportion of the said rent, however, appertaining to the shares of capital stock of said lessor, of which the lessee shall at such times be the owner, shall not be paid over to the lessor, or any other person, but shall from time to time, as it becomes due, be retained by the lessee; . . ."

■ The second issue is whether the rental retained by L & N by virtue of its ownership of N & D stock constituted net earnings taxable to N & D. The chancellor held that the retention of the annual seven and one-half percent sums represented by L & N's stock ownership was, in effect, payment to N & D and repayment to L & N. We affirm.

N & D argues that only sums that were in fact paid should constitute net earnings to N & D. Further, N & D insists that *Louisville H & St. L. Ry. Co. v. United States*, 20 F.Supp. 483 (D.C.W.D.Ky.1937), constitutes authority directly in point because of that case's holding that a lessor realizes no income when lease payments, measured by its stock, are retained by a lessee–stockholder.

No definition of "net earnings" in the excise tax statutes exists but the Court opined as follows in *Brookside Mille, Inc. v. Atkins*, 204 Tenn. 517, 322 S.W.2d 217 (1959):

"This Court, upon numerous occasions has held that all the net earnings of a corporation, without regard to the source from which they were derived, constituted the measure of the excise tax and that since the statute did not define the term 'net earnings' it must be given its usual and ordinary meaning, that is what is left of earnings after deducting necessary and legal items of expense incident to the corporate business.

. . . . .

It was the intention of the Legislature that all net earnings of a corporation, from whatever source derived, shall constitute the measure of the tax." *Id.* at 520, 322 S.W.2d at 218.

T.C.A. § 67–2715 was applicable and relevant to the taxable years involved here and read as follows:

"§ 67–2715. *Finality of commissioner's decisions.*–In all matters requiring the exercise of judgment and discretion as to what may or may not be net earnings, the judgment and opinion of said commissioner shall be final and conclusive and there shall be no review of his action except that the taxpayer shall have the right to pay any such tax under protest and sue for the recovery thereof . . . ."

■ Thus, the commissioner was given discretion in all matters requiring the exercise of judgment as to what constituted net earnings and, unless it was shown that the method employed was arbitrary or a manifest abuse of discretion, her action was final and not subject to judicial review. *See e. g., Southern Coal Co. v. McCanless,* 183 Tenn. 457, 192 S.W.2d 1003 (1946).

By the express terms of the lease the consideration for the use of N & D's properties was a sum equal to seven and one–half percent per annum upon *all* of the capital stock of N & D. The stock held by L & N was not excluded from the statement in the lease of the sum due as rent, and reason and logic support the commissioner's decision to measure the net earnings of N & D as seven and one–half percent times its outstanding capital stock, including that held by lessee, L & N. The fact that the lease provided that the rent was to be paid by L & N directly to the stockholders does not exempt the lessee–stockholder's share of the earnings from treatment as net earnings of N & D.

We respectfully reject the contentions of N & D. We do not find the commissioner's action in treating the consideration stated in the lease for the use of its property to be an arbitrary judgment merely because the lessee–stockholder did not in fact pay to itself the sum of seven and one–half percent on its stock in N & D. *Louisville, H & St. L. Ry. Co. v. United States, supra,* involved federal income taxes and was decided upon an interpretation of the definition of gross income as it appeared in the Revenue Act of 1928 and is not persuasive upon the issue involved in this case.

The decree of the Chancery Court of Davidson County is affirmed. The costs are adjudged against the Commissioner of Revenue.

BROCK, C. J., and COOPER and HARBISON, JJ., concur.